# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

### Case No. 22-3043

EMILY SOUSA,

*Plaintiff-Appellant,*

v.

AMAZON.COM, INC., AMAZON.COM SERVICES LLC
AND LAWRENCE DORSEY, IN HIS INDIVIDUAL
AND PROFESSIONAL CAPACITIES,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Delaware, C.A. No.: 1:21-cv-00717 (Bibas, J.)

### PLAINTIFF-APPELLANT'S OPENING BRIEF

Michele D. Allen (DE Bar No. #4359)
Delia A. Clark (DE Bar No. #3337)
ALLEN & ASSOCIATES LLC
4250 Lancaster Pike, Suite 230
Wilmington, DE 19805

Lawrence M. Pearson
WIGDOR LAW LLP
85 Fifth Avenue
New York, NY 10003

March 28, 2023

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................... iii

I.    SUBJECT MATTER AND APPELLATE JURISDICTION ........................1

II.   ISSUES PRESENTED .................................................................1

III.  RELATED CASES AND PROCEEDINGS ...................................................2

IV.   STATEMENT OF THE CASE .......................................................2

      A.   Relevant Facts ...................................................................2

      B.   Procedural History and Ruling Presented for Review .............................9

V.    SUMMARY OF ARGUMENT ...................................................10

VI.   STANDARD OF REVIEW .........................................................10

VII.  ARGUMENT .......................................................................11

      A.    The District Court Erred in Dismissing Appellant's Hostile Work
            Environment Claims ..................................................................11

            1.    In Holding That Appellant Failed to Allege a Severe or Pervasive
                  Harassment, the District Court Made Improper Inferences and
                  Failed to Consider the Totality of the Circumstances ..............11

            2.    The District Court Manifestly Failed to Draw All Reasonable
                  Inferences in Appellant's Favor, and Expressly Drew Inferences
                  against Appellant...............................................................17

      B.    The District Court Erred in Dismissing Appellant's Sex/Gender and
            Race Discrimination Claims.......................................................18

            1.    Appellant Sufficiently Alleges That She Suffered Adverse
                  Actions in Support of Her Discrimination Claims ..................19

2.    Appellant's Allegations Support an Inference of Discrimination ....................................................................................23

C.    The District Court Erred in Dismissing Appellant's Retaliation Claims ....................................................................................25

1.    Appellant Alleges That She Engaged in Protected Activity.....25

2.    Appellant Alleges That Her Protected Activity Causes Appellees to Take Adverse Actions Against Her ......................................26

D.    The District Court Erred In Dismissing Appellant's Claims Of Quid Pro Quo Sexual Harassment..................................................................................29

VIII. CONCLUSION ................................................................................30

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    <u>Page(s)</u>

Abramson v. William Paterson Coll. Of New Jersey,
   260 F.3d 265 (3d Cir. 2001) ....................................................................26

Aman v. Cort Furniture Rental Corp.,
   85 F.3d 1074 (3d Cir. 1996) ...................................................................22

Andrews v. City of Philadelphia,
   895 F.2d 1469 (3d Cir. 1990) .................................................................12

Armbruster v. Epstein,
   1996 WL 289991 (E.D. Pa. May 31, 1996).............................................26

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)................................................................................11

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007)................................................................................11

Brown v. R.R. Grp. LLC,
   350 F. Supp. 3d 300 (D.N.J. 2018).........................................................20

Burlington Indus., Inc. v. Ellerth,
   524 U.S. 742 (1998)................................................................. 19, 20, 22

Calloway v. E.I. DuPont de Nemours & Co.,
   No. C.A. 98-669 (SLR), 2000 WL 1251909 (D. Del. Aug. 8, 2000)...................24

Cardenas v. Massey,
   269 F.3d 251 (3d Cir. 2001) ...................................................................22

Castleberry v. STI Grp.,
   863 F.3d 259 (3d Cir. 2017) ...................................................... 12, 17

Connelly v. Lane Const. Corp.,
   809 F.3d 780 (3d Cir. 2016) ................................................... 11, 19, 27

Curry v. Devereux Found.,
   541 F. Supp. 3d 555 (E.D. Pa. 2021) .......................................................20

Daniels v. Sch. Dist. Of Philadelphia,
   982 F. Supp. 2d 462 (E.D. Pa. 2013) ......................................................21

Durham Life Ins. Co. v. Evans,
   166 F.3d 139 (3d Cir.1999) ............................................... 12, 13, 19, 21

Farrell v. Planters Lifesavers Co.,
   22 F. Supp. 2d 372 (D.N.J. 1998) ..........................................................25

Farrell v. Planters Lifesavers Co.,
   206 F.3d 271 (3d Cir. 2000) ............................................................ 29, 30

Fasold v. Justice,
   409 F.3d 178 (3d Cir. 2005) ...................................................................27

Fleisher v. Standard Ins. Co.,
   679 F.3d 116 (3d Cir. 2012) ............................................................ 11, 18

Flora v. Cnty. of Luzerne,
   776 F.3d 169 (3d Cir. 2015) ...................................................................11

Fowler v. UPMC Shadyshide,
   578 F.3d 203 (3d Cir. 2009) ............................................................ 10, 11

Fuentes v. Perskie,
   32 F.3d 759 (3d Cir. 1994) .....................................................................24

Hall v. Gus Constr. Co.,
   842 F.2d 1010 (8th Cir.1988) ................................................................12

Harris v. Forklift Sys., Inc.,
   510 U.S. 17 (1993).................................................................................12

Jones v. Sch. Dist. Of Philadelphia,
   198 F.3d 403 (3d Cir. 1999) ...................................................................21

Jones v. Se. Pa. Transp. Auth.,
  796 F.3d 323 (3d Cir. 2015) ...................................................................19

Komis v. Sec'y of United States Dep't of Lab.,
  918 F.3d 289 (3d Cir. 2019) ......................................................... 10, 26

Konstantopoulos v. Westvaco Corp.,
  112 F.3d 710 (3d Cir. 1997) ...................................................................16

LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,
  503 F.3d 217 (3d Cir. 2007) ...................................................................27

Makky v. Chertoff,
  541 F.3d 205 (3d Cir. 2008) ...................................................................18

Maull v. Div. of State Police, Dep't of Pub. Safety, State of Delaware,
  141 F. Supp. 2d 463 (D. Del. 2001).......................................................23

Meritor Sav. Bank, FSB v. Vinson,
  477 U.S. 57 (1986)...................................................................................29

Moody v. Atl. City Bd. of Educ.,
  870 F.3d 206 (3d Cir. 2017) ...................................................................14

Moore v. City of Philadelphia,
  461 F.3d 331 (3d Cir. 2006) ......................................................... 25, 26

Oncale v. Sundowner Offshore Servs., Inc.,
  523 U.S. 75 (1998).......................................................................... 12, 13

Pa. State Police v. Suders,
  542 U.S. 129 (2004).................................................................................12

Phillips v. Cnty. of Allegheny,
  515 F.3d 224 (3d Cir. 2008) ......................................................... 10, 18

Reeves v. Sanderson Plumbing Prods., Inc.,
  530 U.S. 133 (2000).................................................................................23

Schafer v. Board of Public Education,
  903 F.2d 243 (3d Cir.1990) ...................................................................23

Spain v. Gallegos,
  26 F.3d 439 (3d Cir. 1994) ...................................................................12

Sprecher v. Se. Home Health Servs. of PA, LLC,
  No. 5:20 Civ. 00968, 2020 WL 3830148 (E.D. Pa. July 8, 2020) ......................25

Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.,
  971 F.3d 416 (3d Cir. 2020) ...................................................................13

Swierkiewicz v. Sorema N.A.,
  534 U.S. 506 (2002) ...............................................................................11

Torre v. Casio, Inc.,
  42 F.3d 825 (3d Cir. 1994) .....................................................................21

Statutes

28 U.S.C. §§ 1291, 1331 and 1343 ............................................................1

42 U.S.C. § 2000e ........................................................................... 1, 2, 9

U.S.C. § 1981 ................................................................................. 1, 2, 9

## I.    SUBJECT MATTER AND APPELLATE JURISDICTION

The United States District Court for the District of Delaware ("District Court") had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291, as Appellant is appealing a final order from the District Court that granted Defendants' Motion to Dismiss in its entirety and dismissed Appellant's claims with prejudice (Appx. 3-17) ("Dismissal Order") on September 29, 2022. This appeal is timely as it was filed on October 28, 2023.

## II.    ISSUES PRESENTED

1.    Whether the District Court erred in dismissing Appellant's claims of hostile work environment on the basis of sex/gender and/or race, ethnicity, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and on the basis of race/ethnicity in violation of Section 1981 of the Civil Rights Act of 1866, 42. U.S.C. § 1981.

2.    Whether the District Court erred in dismissing Appellant's claims of discrimination on the basis of sex/gender and/or race, ethnicity, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and on the basis of race/ethnicity in violation of Section 1981 of the Civil Rights Act of 1866, 42. U.S.C. § 1981.

3.    Whether the District Court erred in dismissing Appellant's claims of

retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and Section 1981 of the Civil Rights Act of 1866, 42. U.S.C. § 1981.

4.    Whether the District Court erred in dismissing Appellant's claims of quid pro quo sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

## III.    RELATED CASES AND PROCEEDINGS

There are no related cases or proceedings that are applicable to this appeal.

## IV.    STATEMENT OF THE CASE

### A.    Relevant Facts

Upon starting at Amazon in June 2020, Appellant Emily Sousa ("Sousa") was confronted with harassment based on her sex/gender. While in training, a male manager compared her to a pornography actress he named and said "women are too delicate to work at Amazon." ¶¶3, 9, 39-42.[1] Sousa was disgusted and told her station manager that she was resigning. ¶43. Sousa also complained, which resulted in Amazon offering to reinstate and transfer her. ¶44. Sousa accepted and started working in New Castle, Delaware. ¶44. Amazon did not conduct a proper investigation, with little to no effort made to identify her harasser. ¶¶61-69, 71-74.

Sousa began reporting to Lawrence Dorsey. ¶50. Before Sousa started work with him, Dorsey pulled up a photograph of Sousa from Amazon's internal systems

---

[1]    "¶" refers to paragraphs in Sousa's Second Amended Complaint. Appx. 68-118.

and remarked to a colleague, "She's really pretty, I can't wait to work with her."
¶55. Dorsey almost immediately began harassing Sousa based upon her race and
gender, often during long after-hours telephone calls on which he discussed his
desire to have a romantic relationship with Sousa and made inappropriate,
stereotypical comments about Sousa's Japanese heritage (including about how being
Japanese supposedly made her more deferential and conflict-avoidant at work). ¶¶8,
51, 84, 133. Dorsey also recounted Sousa's experience of harassment at her prior
facility to coworkers and told people that Sousa had been compared to an "Asian
porn star," despite the fact that the adult actress to whom she was compared was not,
in fact, Asian. ¶¶53, 54. Sousa was also subjected to race-based harassment by
colleagues, one of whom greeted her with "Ni hao" (a Chinese word for "hello"),
despite Sousa not being Chinese, and other employees referred to Sousa by the name
of an Asian manager who had left Amazon (possibly as intentional mockery). ¶58.

Dorsey continued to make unwanted personal, harassing calls to Sousa with
repeated unwelcome advances that made her feel uneasy and unsafe. Over the three
months from August 31 through November 2020, Dorsey made personal calls to
Sousa on at least fourteen (14) separate days, with at least five sessions lasting over
an hour and another four lasting approximately an hour or more than 30 minutes
(with Dorsey often calling Sousa several times over the course of these
conversations). ¶75. Dorsey also sent Sousa unsolicited "selfies" and would ask her

3

about his appearance. ¶76. Dorsey's also badgered Sousa about going on a non-work-related trip with him to the University of Delaware to "show him around," told her that he would answer Sousa's calls even in the "middle of the night" (in a context that was "sexual in nature and not at all merely 'friendly'"), asked Sousa to go to Japan with him as his "travel guide," told her that he likes Anime, and repeatedly asked about and commented upon her Japanese heritage. ¶¶77, 79, 80, 85, 86, 121. While discussing Sousa's heritage, Dorsey posited stereotypes that Japanese people are submissive because they are "polite and non-confrontational," and he later applied this stereotype directly to Sousa as a criticism when assessing her at work. ¶84. Dorsey also dangled the prospect of a promotion to Sousa and suggested he could ensure she got a promotion and larger-than-normal pay raise (with the intended implication he would do this if she gave in to him). ¶¶100, 107, 117.

Dorsey had a well-known reputation at the Amazon facility as a "total creep" with an "Asian fetish" who actively pursued sexual relationships with his female subordinates and didn't treat women well unless he "has a use for them." ¶¶91-93, 124, 163. For example, a Shift Manager, Ismel Morales Ramirez, told Sousa that Dorsey frequently made sexual advances toward women he managed and gave out his phone number to those women. ¶91. This colleague also said that Dorsey had commented upon the body of one of their colleagues, Diana Velasquez, saying that she had a "fat ass." ¶96. This was a blatant sexual remark and showed complete

disrespect for a female employee. Ramirez also informed Sousa that Dorsey bragged to her about a romantic relationship he was initiating with another female subordinate. ¶92. Sousa later learned that this female employee became Dorsey's girlfriend and Sousa observed that, as a result, the female employee received special treatment from Dorsey including, but not limited to, additional authority, apparently fraudulent adjustments to her timecard to account for missed shifts, and permission to abandon certain responsibilities in order to spend personal time with Dorsey. ¶¶92, 109, 114-118. Other employees recognized that Dorsey's preferential treatment of this female employee was due to their romantic relationship, and not her merit. ¶116. Indeed, Dorsey directed Sousa to discipline another female subordinate, Diana Velasquez, who had rebuffed his advances. ¶95-98. Sousa knew Dorsey was using her as a cat's paw, singling out and disciplining Ms. Velasquez solely because she had rebuffed his advances, and therefore she declined to follow through on Dorsey's unlawful discriminatory and retaliatory request. ¶¶98-99. Dorsey later admitted to Sousa that he used discipline to intimidate employees. ¶145. This provided a template for other unlawful actions Dorsey would soon take against Sousa.

Dorsey continued to make sexual and romantic advances on Sousa by asking about her relationship status, discussing his love life, and inviting Sousa on dates despite her repeated declinations and lack of interest. ¶101. Sousa's rejection of Dorsey's sexual advances quickly resulted in unfavorable treatment and interference

with her ability to do her job. ¶101-104, 110. In November 2020, Dorsey offered a promotion to a less-experienced white male coworker, who accepted the promotion and upon acceptance was promoted to Level 5. ¶¶136-138. The same promotion opportunity was not offered to Sousa despite the same role being discussed with her.

Later that month, Sousa again was punished when Dorsey temporarily demoted her from Level 4 to Level 1 and reassigned her to a facility in New Jersey and a manual labor position during Amazon's peak season. ¶¶139-155, 160-62. This demotion resulted in Sousa not having anyone to supervise and missing a key evaluation period. ¶¶151-155. At Amazon, promotions for Shift Managers are in large part based on performance reviews generated by subordinates and others during peak periods (such as the lead-up to the holidays, when Sousa was shipped off to New Jersey). ¶¶154-155, 158. This demotion significantly impacted her prospects for future promotions. ¶¶154-157. Dorsey admitted that he did not want to transfer one of Sousa's white male peers, Mike Clungston, because he did not want to interfere with his potential promotion (as opposed to hers). ¶¶146-149. Dorsey chose to demote Sousa despite there being many other employees at lower levels with equivalent or less experience who would have been better-suited to the role. ¶¶151-152. Dorsey provided pretextual excuses for his decision to demote and send Sousa to the New Jersey facility, which deviated from regular practices and were recognized by other employees as blatantly false and wrong. ¶¶153, 166-167, 172,

176. Dorsey admitted to Sousa that the transfer was "humiliating" and that he saw it as something that would "humble" Sousa and that others would want to avoid. ¶151. Due to this unabashed unlawful discrimination and retaliation, Sousa was not promoted in 2021 despite Amazon's internal systems indicating that she would be eligible for a promotion in Spring 2021. ¶¶143-144, 148-149. In New Jersey, Sousa was switched from her day shift to overnight work starting at 11:00p.m. doing less-desirable manual labor that significantly deviated from her managerial job duties. ¶¶174-175. At the same time, Dorsey pressured and intimidated Sousa into giving him favorable feedback to add to his own reviews from subordinates. ¶¶156-157.

Upon being scheduled to return to work in Delaware, Sousa sent Dorsey a Chime instant message on December 1, 2020, letting him know that she intended to resign. ¶184. Dorsey called Sousa and said he wanted her to consider taking a leave of absence instead. ¶185. Unconscionably, Dorsey again pressed Sousa about her personal life. Dorsey asked about Sousa's boyfriend at the time and said, "How available are you?" When Sousa asked what he meant, he responded, "I don't know how serious you and your boyfriend are, I was just asking." ¶187. Even after Sousa's distress due to his blatant retaliation and intimidation was clear, he revoltingly kept trying to pressure her into a personal relationship. Dorsey then laughably claimed that he was asking these questions for an unidentified "friend," though it was obvious he was asking for himself. ¶188. Dorsey said any leave would be unpaid, and further

pressured Sousa into considering going on a date with his supposed "friend." ¶¶188-

190. Dorsey called again on December 4, 2020 to tell Sousa about her leave status,

saying her leave would begin on December 8, 2020, and that she should use her

accrued paid time off ("PTO") days for December 1 through December 7, 2020.

¶191. Dorsey again asked Sousa about her plans with her boyfriend when he returned

from the military. ¶192. The distress forced her to seek medical treatment and go on

a leave that lasted until July 2021. ¶¶177-182, 191-192, 212-214.

In January 2021, while on leave, Sousa made a formal complaint to HR

regarding Dorsey's behavior, and Amazon conducted another sham investigation,

finding Sousa's allegations to be "unsubstantiated." ¶¶194, 197-204. Coinciding

with Sousa's second complaint and Amazon's investigation, Sousa began to receive

anonymous harassing phone calls from someone who sounded just like and she

believed was Dorsey. ¶¶218, 219. The caller taunted Sousa, saying he was someone

Sousa knew, and that Sousa knew what he wanted from her, before hanging up

abruptly and calling back minutes later with the same routine. ¶¶220-230. Based on

this frightening and sustained harassment/retaliation and under a legitimate fear for

her safety, Sousa could not reasonably have been expected to return to work with

her harasser, and so she again requested a transfer to a new worksite. ¶¶214, 231.

Amazon declared she supposedly could not transfer while on leave and she first had

to return to work with Dorsey. ¶¶206-208. This unjustifiable refusal by Amazon to

transfer Sousa with no credible reason was transparently retaliatory and an effort to force her out of her job, and Amazon constructively discharged her by refusing a reasonable and easily met request not to return to work with her harasser (particularly after transferring her after her mid-2020 complaint). ¶232.

## B.    Procedural History and Ruling Presented for Review

Sousa filed her action in the United States District Court for the District of Delaware on May 20, 2021, asserting claims under Section 1981 of the Civil Rights Act of 1866, 42. U.S.C. § 1981 ("Section 1981") and, later, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). Dkt. No. 1. Appellees filed a Motion to Dismiss on July 20, 2021. Dkt. No. 11. On August 3, 2021, Sousa filed an Amended Complaint. Dkt. No. 14. Appellees filed a Motion to Dismiss the Amended Complaint on August 17, 2021. Dkt. No. 16. On December 13, 2021, Appellees' Motion to Dismiss was granted with leave to amend. Dkt. No. 27. Sousa filed a Second Amended Complaint on January 12, 2022. Dkt. No. 28. Appellees filed a Motion to Dismiss Sousa's Second Amended Complaint on February 9, 2022. Dkt. No. 32. On September 29, 2022, the District Court granted Appellees' Motion to Dismiss in its entirety and dismissed Sousa's claims with prejudice ("Dismissal Order"), which Appellant presents for review. Dkt. No. 46. On October 28, 2022, Sousa filed her Notice of Appeal. Dkt. No. 47.

## V.    SUMMARY OF ARGUMENT

The District Court erred on all of the issues presented by dismissing Appellant's claims based upon impermissible factual inferences and applying standards that are not appropriate on a motion to dismiss (such as seemingly requiring pleading of a prima facie case). See, e.g., Fowler v. UPMC Shadyshide, 578 F.3d 203, 213 (3d Cir. 2009). Appellant's hostile environment claims are supported by detailed factual allegations that were not afforded proper weight or assessed on the totality of the circumstances (such as patterns of predatory conduct and retaliation by her supervisor). The District Court also disregarded many allegations and made factual inferences against Plaintiff/Appellant in dismissing claims of discrimination, retaliation and quid pro quo harassment, including by discounting adverse actions that did have tangible effects on Appellant's employment and met the appropriate standard for retaliation claims. See Komis v. Sec'y of United States Dep't of Lab., 918 F.3d 289, 293 (3d Cir. 2019).

## VI.    STANDARD OF REVIEW

For all issues presented, the appropriate standard of review is de novo. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008). The District Court's order is reviewed "anew and without any deference." Id. at 230.

Under Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine

whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Fleisher v. Standard Ins. Co.</u>, 679 F.3d 116, 120 (3d Cir. 2012). It is improper for the court to make factual determinations when deciding a motion to dismiss. <u>Flora v. Cnty. of Luzerne</u>, 776 F.3d 169, 175 (3d Cir. 2015). A complaint need only plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). The standard is "plausible," not "proof" or "convincing," and if claims are not legally implausible, discovery should be conducted. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007) (standard "does not impose a probability requirement"). "[A] plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." <u>Fowler v. UPMC Shadyshide</u>, 578 F.3d 203, 213 (3d Cir. 2009); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514-15 (2002); <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 788-89 (3d Cir. 2016).

## VII.   ARGUMENT

### A.   The District Court Erred in Dismissing Appellant's Hostile Work Environment Claims

#### 1.   In Holding That Appellant Failed to Allege a Severe or Pervasive Harassment, the District Court Made Improper Inferences and Failed to Consider the Totality of the Circumstances

On a hostile work environment claim, the workplace must be permeated with

discriminatory conduct that is "severe *or* pervasive." Pa. State Police v. Suders, 542 U.S. 129, 133 (2004); Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993).

Determining whether a work environment is hostile requires looking at the totality of the circumstances. See Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017); Durham Life Ins. Co. v. Evans, 166 F.3d 139, 149 (3d Cir.1999) ("a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.") (internal citations omitted); see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) ("the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances") (internal citation and quotation marks omitted).

"An employee can demonstrate that there is a sexually hostile work environment without proving blatant sexual misconduct," because, "the **intent to discriminate on the basis of sex could be demonstrated through actions which are not sexual by their very nature**." Spain v. Gallegos, 26 F.3d 439, 447 (3d Cir. 1994) (emphasis added). "Intimidation and hostility toward women because they are women can obviously result from conduct other than explicit sexual advances." Andrews v. City of Philadelphia, 895 F.2d 1469, 1485 (3d Cir. 1990) (citing Hall v. Gus Constr. Co., 842 F.2d 1010, 1014 (8th Cir.1988)).

Courts look at the totally of the circumstances and consider hostile behavior that may appear neutral and nondiscriminatory on its face: "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing . . . and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." <u>Oncale</u>, 523 U.S. at 81-82. Naturally, this is a highly fact-specific exercise, which requires factual inferences.

Despite claiming it did the opposite, the District Court improperly assessed the harassment Sousa faced as isolated examples rather than in their aggregate and totality. Dismissal Order at pp. 5-7 (assessing the severity and pervasiveness of Sousa's allegations individually rather than truly in their aggregate). The District Court should have considered the harassing incidents cumulatively to determine whether, combined, they plausibly could amount to a severe or pervasive hostile work environment (including their potential to do so after discovery). <u>See</u> <u>Durham Life Ins. Co.</u>, 166 F.3d at 155 ("[I]t is settled law that courts should not consider each incident of harassment in isolation. Rather, a court must evaluate the sum total of abuse over time.") (internal citation omitted). While engaging in a piecemeal analysis of Sousa's allegations, the District Court seemingly improperly concluded that Sousa fails to allege a hostile work environment claim because her case is not analogous to certain extreme examples. Dismissal Order at pp. 6-7 (citing <u>Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.</u>, 971 F.3d 416 (3d Cir. 2020)

13

(coerced sex and showing plaintiff pornography); <u>Moody v. Atl. City Bd. of Educ.</u>, 870 F.3d 206 (3d Cir. 2017) (assault and coerced sex).

The District Court failed to consider the full context in which the harassment occurred (e.g., pressuring Sousa to go out with him on numerous lengthy after-hours personal phone calls, with a demonstrated pattern of reprisals), which undeniably supports an inference that Dorsey targeted Sousa (and other women and Asian female employees) for harassment based upon gender/sex and race. Highly suggestive and significant incidents and aspects of the environment include: before even meeting Sousa, Dorsey commented about her attractiveness to another employee and remarked that he "couldn't wait to work with her" because she was "really pretty" (¶55); other employees observed that Dorsey was a "total creep" who appeared to have an "Asian fetish" and was hostile to female employees unless he "has a use for them" (¶¶9, 91-93, 124, 163); Dorsey "excitedly" stated to another employee that Sousa was compared to an "<u>Asian</u> porn star" (untrue, as a previous coworker had compared her to a porn star who was white, not Asian) (¶¶9, 53-54, 125); Dorsey frequently pursued romantic relationships with his female subordinates and made sexual comments about other women in the workplace, including that a female employee had a "fat ass" (¶¶10, 91-98, 109); Dorsey expressed and applied raced-based stereotypes (including that Sousa being Japanese supposedly made her more deferential and conflict-avoidant at work) to Sousa and displayed a fixation

14

with Sousa's Japanese heritage (¶¶9, 82-86, 133); Dorsey targeted another Asian female employee with a similar pattern of harassing phone calls (¶124); Dorsey directed Sousa to discipline an employee for conduct that others had engaged in and was commonplace because she had rebuffed his advances (¶¶95-99); Dorsey bragged about a romantic relationship he had with a female subordinate who Sousa and others observed Dorsey treating preferentially in substantial terms and conditions of employment (¶10, 92, 109, 114-118); and Dorsey directly pressured Sousa to go on a date with his "friend" after temporarily demoting her (¶¶188-190). These aspects of Sousa's work environment, which is not the full litany of harassing conduct pled by Sousa, support a plausible claim of hostile environment based on Sousa's gender and race, and should not have been ignored or discounted.

In overlooking the full context and range of Dorsey's conduct, the District Court disregarded Dorsey's implicitly sexual and non-sexual conduct, which Sousa appropriately alleges as part of the hostile work environment. Such conduct includes that Dorsey made an excessive number of phone calls to Sousa in which he would discuss personal matters, including her dating life and Japanese heritage (¶¶75, 84, 85, 88); Dorsey sent Sousa unsolicited selfies remarking about his appearance (¶76); Dorsey pressured Sousa to spend private time with him in non-work settings, including requesting that she go on vacation with him to Japan where she would be his "travel guide" (¶¶77, 80, 85-86); Dorsey dangled the prospect of a promotion to

Sousa with the implication that she would receive it only if she gave in to him (¶¶100, 107, 117); Dorsey promoted a less-experienced white male coworker instead of Sousa after she repeatedly rejected his advances (¶¶137-138); and Dorsey demoted Sousa three levels and assigned her to overnight shifts doing manual work at another facility, a move that caused Sousa to miss a key evaluation period and hurt her prospects for promotion (¶¶139-140, 146-149, 151-157). Dorsey's conduct so severely impacted Sousa's emotional and mental health that she was forced to take a leave of absence. ¶¶177-182, 189, 212. After complaining to Amazon in detail about Dorsey's harassment, Sousa began receiving harassing phone calls from a caller who seemed to be Dorsey, causing her to fear for her safety. ¶¶217-231. Amazon also refused to transfer Sousa and allow her to return to work at another facility rather than with her harasser, and constructively discharged Sousa. ¶¶206-214. The District Court failed to consider Amazon's attempt to force Sousa to work with her harasser, which strongly supports a possible finding of a hostile work environment. See Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 718 (3d Cir. 1997) ("the mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment").

These acts and incidents amount to an environment of frequent humiliating and threatening harassment that unreasonably interfered with Sousa's ability to do

her job, and the District Court erred in finding that Sousa failed to allege a plausible hostile work environment claim. <u>Castleberry</u>, 863 F.3d at 264.

### 2. The District Court Manifestly Failed to Draw All Reasonable Inferences in Appellant's Favor, and Expressly Drew Inferences against Appellant

In addition, the District Court improperly drew key inferences in Appellees' favor. First, the District Court improperly drew the factual conclusion and inference that Dorsey merely discussed "personal matters" when he suggested that he and Sousa "hang out socially," and purportedly "never said anything sexual." <u>See</u> Dismissal Order at p. 6. This is plainly improper and incorrect even on the face of the allegations, which include much sexually charged and explicit conduct by Dorsey. The District Court made assumptions benefiting Appellees against the weight of the allegations (e.g., that Dorsey somehow did not have sexual designs on Sousa) and ignored Dorsey's obvious intentions and blatant, demonstrated *modus operandi*. The District Court ignored that Dorsey's advances were made in the context of the above-described work environment, in which Dorsey, *inter alia*, doggedly pursued Sousa and, importantly, other women he supervised, commented about the desirability of Sousa and the body of another woman, and dangled a promotion to Sousa before openly punishing her for refusing to submit to him (against the backdrop of similar conduct for and against others). Similarly, the District Court expressly made improper factual findings about and discounted the

17

harassing calls that appeared to come from Dorsey and made Sousa fear for her safety, labeling them as merely "creepy" and not "physically threatening." Dismissal Order at p. 7. The District Court also improperly inferred that the harassing conduct was not sufficient because Dorsey's statements directly to Sousa were not explicitly sexual. See Dismissal Order at p. 6 (incorrectly concluding and inferring that Dorsey "never said anything sexual"). The District Court later contradicted its own improper inference by acknowledging that Dorsey's conduct "**could be taken as sexual advances**" that even "came with hints about promotion." Dismissal Order at p. 13 (emphasis added). In making such improper inferences against Appellant, the District Court improperly concluded that Sousa's allegations amounted to "gender-related jokes and occasional teasing" that were "episodic." Dismissal Order at pp. 6-7. Such inferences and the District Court's conclusions were improper. Fleisher, 679 F.3d 116; Phillips, 515 F.3d at 228. Appellant's claims should move forward.

### B.    The District Court Erred in Dismissing Appellant's Sex/Gender and Race Discrimination Claims

A plausible disparate treatment claim exists when a plaintiff alleges that she has "suffered an adverse employment action" and the circumstances of that adverse employment action "give rise to an inference of intentional discrimination." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). The District Court improperly conducted its analysis regarding adverse actions and inference of discrimination as though Appellant was required to plead a prima facie case, and again drew inferences

against her. Dismissal Order at p. 8; <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 788 (3d Cir. 2016) (faulting district court for engaging in "point-by-point consideration of the elements of a prima facie case" and reiterating that a complaint must only "raise a reasonable expectation that discovery will reveal evidence of" the necessary elements.") (internal citation and quotation marks omitted).

### 1. Appellant Sufficiently Alleges That She Suffered Adverse Actions in Support of Her Discrimination Claims

Conduct causing a "significant change in employment status" is an adverse action. <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998). Changes that "alter compensation, terms, conditions, or privileges of employment" amount to adverse actions. <u>Jones v. Se. Pa. Transp. Auth.</u>, 796 F.3d 323, 326 (3d Cir. 2015). "If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." <u>Durham Life Ins. Co.</u>, 166 F.3d at 153.

The District Court erred in finding that Sousa failed to allege adverse actions, particularly in light of the standard applicable to a motion to dismiss. The Complaint alleges that: Defendants offered an unposted promotion to a less-experienced white male employee instead of Sousa (¶¶137-138); transferred her to another location and demoted her such that her trajectory at Amazon was harmed (¶¶139-155, 160-162168); drove her to take a medical leave due to distress caused by Defendants' actions, which also led to loss of income during unpaid leave (¶177-191); and

ultimately was constructively discharged her due to a pattern of harassment and retaliation (e.g., Amazon's unjustifiable and cruel refusal to allow her to return to work at a location where her harasser was not present). ¶¶206-214, 232.

The District Court erred in finding that Sousa's lost 2021 promotion and the failure to offer her a promotion on the same basis as a male coworker in November 2020 were not adverse actions. ¶¶ 136-38, 143, 147-58; Curry v. Devereux Found., 541 F. Supp. 3d 555, 559 (E.D. Pa. 2021). Dorsey denied Sousa the opportunity to be considered for a promotion on the same terms as her peers, and she did not get promoted in 2021, when she was supposed to be eligible for one. ¶¶148, 149. Dorsey also discriminatorily and retaliatorily did not offer Sousa a promotion in connection with a possible transfer in November 2020, and instead gave a less-senior male peer a promotion in connection with the same transfer proffered to Sousa. ¶¶137-138. Loss of promotion unquestionably is an adverse action. Curry, 541 F. Supp. 3d at 559; Brown v. R.R. Grp. LLC, 350 F. Supp. 3d 300, 304 (D.N.J. 2018).

Sousa's temporary demotion by Dorsey also was an actionable adverse action. The District Court itself noted that demotions are marked by "a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." Burlington Indus., Inc., 524 U.S. at 761 (internal quotation marks omitted). That Sousa's compensation did not change during the transfer and demotion is merely an "indicator of a tangible adverse

employment action, it is not the *sine qua non*." <u>Durham Life Ins.</u>, 166 F.3d at 153. Where "an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." <u>Id.</u> That is precisely what this demotion did. ¶¶146-149, 154-155, 158, 174-176.

It is well-established that worksite transfers also can be adverse actions. <u>See</u>, <u>e.g.</u>, <u>Jones v. Sch. Dist. Of Philadelphia</u>, 198 F.3d 403, 411–12 (3d Cir. 1999) ("transfers and demotions may suffice to establish the third element of a plaintiff's prima facie case"); <u>Torre v. Casio, Inc.</u>, 42 F.3d 825, 831 n.7 (3d Cir. 1994) (material fact issue where plaintiff transferred with no change to pay and benefits); <u>Daniels v. Sch. Dist. Of Philadelphia</u>, 982 F. Supp. 2d 462, 479 (E.D. Pa. 2013) ("A transfer can be an adverse employment action sufficient to satisfy the third element of a prima facie discrimination case when it is shown to be detrimental or undesirable in some objective way."). Barring such transfers as adverse actions would not reflect workplace realities and would give employers an obvious loophole to freely discriminate and retaliate against employees and deter opposition to misconduct. Sousa was demoted by three levels to do manual labor during the peak holiday season on an overnight shift, hours from her home, during the time Amazon evaluates employees for promotions (visibility, performance, and meetings during peak season are key). ¶¶139, 146-149, 154-155, 158, 174-176. Such a

transfer/demotion undeniably amounts to "significantly diminished responsibilities" and a substantial negative change to terms and conditions. <u>Burlington Indus., Inc.</u>, 524 U.S. at 761. Moreover, Sousa alleges that Appellees' conduct had significant and lasting effects on her trajectory and ability to get promoted. ¶¶155-157. However, the District Court ignored the impact on her trajectory at Amazon and inferred that her transfer/demotion and changes to her responsibilities were merely "undesirable" and not an adverse action. Dismissal Order at p. 9.

Finally, in assessing the alleged adverse actions, the District Court improperly concluded that Sousa was not subjected to a constructive discharge. A constructive discharge exists when an "employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." <u>Cardenas v. Massey</u>, 269 F.3d 251, 263–64 (3d Cir. 2001) (internal citations and quotation marks omitted). A "continuous pattern of discriminatory treatment" may constitute "intolerable" conditions even without a particular egregious precipitating incident. <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1084 (3d Cir. 1996) ("The fact that Aman had been subject to continuous discrimination during her employment could support a conclusion that she simply had had enough. No other precipitating facts were legally required."). The pattern of harassing, discriminatory, and retaliatory conduct Sousa was subjected to, along with Amazon's refusal to transfer Sousa away from Dorsey strongly supports a

constructive discharge claim and related inferences, as courts have considered similar conditions to support constructive discharge. See Schafer v. Board of Public Education, 903 F.2d 243 (3d Cir.1990) (where school board knew plaintiff would quit if denied paternity leave, denial constituted constructive discharge).

### 2.    Appellant's Allegations Support an Inference of Discrimination

Without engaging in a substantial analysis, the District Court simply concluded that Sousa did not allege circumstances that give rise to an inference of discrimination. Dismissal Order at p. 11. In arriving at this conclusion, the District Court confined its analysis only to Appellees' refusal to transfer Appellant to a different location (the only act the District Court deemed a potential adverse action), and concluded that because Sousa did not allege that male employees or employees of other races were granted transfers in similar circumstances, Sousa entirely failed to raise an inference of discrimination. Dismissal Order at p. 12. The Court ignored the context in which Appellees' adverse actions occurred and held, improperly, that comparator evidence is required to establish an inference of discrimination. Maull v. Div. of State Police, Dep't of Pub. Safety, State of Delaware, 141 F. Supp. 2d 463, 478 (D. Del. 2001) (It is not "a requirement that a plaintiff prove that similarly situated individuals were treated differently at the prima facie case stage of a race [or gender/sex] discrimination claim."); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is

23

unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive"); <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994) (plaintiff can survive summary judgment by showing "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action").

In addition, Appellant does allege that a less-qualified male employee was awarded a promotion while she was not (¶¶137-138) and that she was subjected to a discriminatory and retaliatory transfer/demotion while less-qualified and less-senior employees were not. ¶¶146-153. Moreover, a discriminatory motive on the basis of sex/gender is implicit in cases that involve sexual propositions and innuendo. <u>See Calloway v. E.I. DuPont de Nemours & Co.</u>, No. C.A. 98-669 (SLR), 2000 WL 1251909, at *5 (D. Del. Aug. 8, 2000), <u>aff'd sub nom.</u>, <u>Calloway v. E.I. Dupont De Nemours & Co.</u>, 29 F. App'x 100 (3d Cir. 2002). Appellant also alleges that: other members of her sex/gender and race were subjected to discrimination and/or harassment by Dorsey (¶¶9, 55, 91-93, 96, 109, 124-25); Dorsey (decisionmaker for the adverse actions) made discriminatory comments (¶¶9, 24, 58, 91, 96, 109, 125); Dorsey admitted the demotion was "humiliating" and suggested that it should "humble" Sousa (admitting to the demotion's punitive, discriminatory, and

retaliatory intent and impact) ¶¶12, 145; Dorsey stated that he used discipline to intimidate employees (¶¶12, 145, 161); Dorsey provided pretextual reasons for transferring and demoting Sousa which deviated from Amazon's typical course of business and were recognized by others as false (¶153, 166-167, 172, 176); and Amazon provided false reasoning for the refusal to allow Sousa to return to work at a location where her harasser was not present (e.g., in light of Sousa's previous transfer). ¶¶19, 206-214. Appellant's discrimination claims should be revived.

### C.    The District Court Erred in Dismissing Appellant's Retaliation Claims

To state a plausible retaliation claim, a plaintiff must allege that: (1) she engaged in activity protected by Title VII, (2) defendant(s) then took an adverse employment action against her, and (3) her protected activity caused the adverse action. Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006). Here, the District Court dismissed Sousa's claims based on an improper finding that Sousa failed to plead the third element of a retaliation claim. Dismissal Order at p. 12.

### 1.    Appellant Alleges That She Engaged in Protected Activity

Sousa engaged in legally protected activity. Sousa repeatedly rebuffed Dorsey's harassment. An employee's rejection of a harasser constitutes legally protected activity. Farrell v. Planters Lifesavers Co., 22 F. Supp. 2d 372, 392 (D.N.J. 1998) ("[R]ejecting sexual advances itself must comprise protected activity."); Sprecher v. Se. Home Health Servs. of PA, LLC, No. 5:20 Civ. 00968, 2020 WL

3830148, at *4 (E.D. Pa. July 8, 2020); <u>Armbruster v. Epstein</u>, 1996 WL 289991, at *3 (E.D. Pa. May 31, 1996). Sousa also engaged in protected activity by reporting Dorsey's conduct in January 2021. This Circuit has held that formal and informal complaints constitute protected activities. <u>See</u> <u>Abramson v. William Paterson Coll. Of New Jersey</u>, 260 F.3d 265, 288 (3d Cir. 2001).

### 2.    Appellant Alleges That Her Protected Activity Caused Appellees to Take Adverse Actions Against Her

In holding that Sousa did not satisfy the third prong of the retaliation analysis, the District Court did not apply the correct standard to adverse actions in connection with retaliation claims, and failed to consider that Sousa engaged in protected activity shortly before Appellees' progressing retaliation began, including her temporary demotion and transfer by Dorsey, her lost 2021 promotion, denial of transfer by Amazon, and constructive discharge.[2] Sousa rejected Dorsey's advances

---

[2]    Appellant describes the adverse actions she was subjected to in detail above in the section regarding her discrimination claims. The bar for conduct to amount to an adverse action in connection with retaliation claims is lower than that for discrimination claims. <u>Moore</u>, 461 F.3d at 341 (3d Cir. 2006) (to support a retaliation claim, a plaintiff need not show an adverse action that alters the terms and conditions of the plaintiff's employment; rather, an adverse action is present when the alleged adverse action "might have dissuaded a reasonable worker" from engaging in protected activity); <u>Komis v. Sec'y of United States Dep't of Lab.</u>, 918 F.3d 289, 293 (3d Cir. 2019) ("Unlike the antidiscrimination provision, the antiretaliation provision is not limited to employer action that affects the terms and conditions of a claimant's employment."). Therefore, any allegations that meet the standard for adverse actions for her discrimination claims would necessarily amount to adverse actions under her retaliation claims.

less than a month before the November 2020 denial of promotion opportunity and her temporary demotion (¶¶ 109-121, 136-38), and additional retaliation (denied 2021 promotion, harassing anonymous calls, refusal of transfer, constructive discharge) swiftly followed Sousa's January 2021 complaint to HR and the investigation's conclusion. Periods up to three months (or less, as is the case here) can support temporal proximity for retaliation causation purposes (generally assessed on summary judgment, not on the pleadings), particularly coupled with other continuing and escalating events. See Connelly v. Lane Const. Corp., 809 F.3d 780, 792 (3d Cir. 2016) (at the motion to dismiss stage, allegation that employee's relationship with supervisors became "increasingly strained" after employee's protected activity supported a causal connection to termination five months later); LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232–33 (3d Cir. 2007) ("Among the kinds of evidence that a plaintiff can proffer are intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus."); Fasold v. Justice 409 F.3d 178, 189 (3d Cir. 2005) (temporal proximity of less than three months may provide an evidentiary basis for inferring retaliation). Dorsey's rising retaliatory animus is demonstrated by a pattern of antagonism and admitted retaliatory motivation, including his "cold shoulder" treatment of Sousa after she rejected his initial

27

advances and other statements admitting animus, which draw a strong connection between the earlier harassment and the November 2020 demotion. ¶¶103-04. The strongest indicator of retaliatory animus by Dorsey is his open statement that Sousa's transfer/demotion was "humiliating" and would "humble" her, especially coupled with Dorsey's admission that he used discipline to intimidate employees and his earlier direction to Sousa to baselessly discipline a female employee who similarly rejected his advances. ¶¶151, 95-99. Sousa pled several other detailed allegations, including observations by other employees, that support an inference that Dorsey and Amazon offered pretextual excuses for their actions and deviated from the normal course of business in acts against Sousa. ¶¶153, 166-167, 172, 176. Dorsey even renewed his demand that Sousa "consider" a relationship with him shortly after he demoted/transferred her. ¶¶187-190. Finally, Appellant's allegations that Dorsey engaged in a pattern of retaliatory conduct against female employees who rejected his advances and rewarding those who gave in to him were supported by specific allegations (including other employees' direct remarks about such conduct) further supports an inference that Dorsey acted with retaliatory animus after Sousa rejected his advances and later complained. ¶¶95-98, 109, 114-118. Adverse actions and retaliatory animus are amply alleged and the retaliation claims should be revived.

**D.    The District Court Erred in Dismissing Appellant's Claims of Quid Pro Quo Sexual Harassment**

Quid pro quo sexual harassment occurs when an employee's "response to unwelcome [sexual] advances was subsequently used as a basis for a decision about compensation, terms, conditions or privileges [of] employment." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281-82 (3d Cir. 2000). Claims and allegations of quid pro quo harassment are not subject to a "severe and pervasive" standard. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). In dismissing Sousa's quid pro quo claims, the District Court again disregarded Sousa's allegations and drew inferences in favor of Appellees. Significantly, the Dismissal Order sums up Sousa's allegations as: "Dorsey suggested that they hang out socially, told her that she could call him in the middle of the night, and once asked how his new haircut looked." Dismissal Order at p. 13. The District Court then improperly concluded that, "Sousa fails to allege that her rejection of Dorsey led to any significant employment decisions." Id. This demonstrates improper and inaccurate factual inferences against the Appellant.

Crucially, inconsistent with its own finding that the hostile work environment claims were not supported by allegations that were sexual in nature, the District Court found that Dorsey's conduct "could be taken as sexual advances" that even "came with hints about promotion" (the apotheosis of quid pro quo conduct). See Dismissal Order at p. 13 (emphasis added). Yet, the District Court incorrectly

concluded that Sousa "has not alleged that rebuffing Dorsey resulted in a 'significant change' to her employment situation." Dismissal Order at p. 13. This is completely contrary to the Appellant's factual allegations, as the District Court failed to consider Sousa's allegations that rebuffing Dorsey's advances resulted in him denying her a promotion (¶¶137-138), demoting and transferring her to a new location in a manner that affected her promotional opportunities and trajectory (¶¶139-155, 160-162), and subjecting her to harassment that resulted in her needing medical leave that led to lost income, a missed promotion, denial of transfer, and ultimately constructive discharge. ¶¶177-182, 185-89, 206-214, 220-230. Additionally, the Court overlooks Sousa's allegations that Dorsey gave preferential treatment to a female subordinate who started dating him, and also tried to get Sousa to act as a cat's paw in retaliating against another woman who rejected him. ¶¶92, 95-98, 109, 114-118. All of the above undeniably amounts to Sousa's "response to unwelcome [sexual] advances" subsequently being "used as a basis for a decision about [her] compensation, terms, conditions or privileges [of] employment." Farrell, 206 F.3d at 281-82. Appellant's quid pro quo claims should move forward to discovery.

## VIII. CONCLUSION

For the reasons set forth above, Appellant's appeal should be granted and the District Court's Dismissal Order reversed in its entirety.

*{Signature Line on Following Page}*

**ALLEN & ASSOCIATES**
/s/ *Michele D. Allen*
Michele D. Allen (#4359)
Delia A. Clark (#3337)
4250 Lancaster Pike Suite 230
Wilmington, DE 19805
(302) 234-8600
(302) 397-3930 (fax)
michele@allenlaborlaw.com
delia@allenlaborlaw.com

and

Lawrence M. Pearson, Esq.
WIGDOR LAW LLP
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845
lpearson@wigdorlaw.com
*Attorneys for Appellant*

Dated: March 28, 2023

## CERTIFICATE OF BAR MEMBERSHIP, ELECTRONIC FILING AND WORD COUNT

I hereby certify that I am a member of good standing of the Bar of the United States Court of Appeals for the Third Circuit.

I further certify that the text of the electronic Brief filed by ECF and the text of the hard copies filed or to be filed with the Court are identical. The electronic copy of the Brief has been scanned for viruses using ESET Endpoint Antivirus.

I further certify that this Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7296 words as calculated by the word processing program used in the preparation of this brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. (32)(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft 365 in 14-point Times New Roman font.

ALLEN & ASSOCIATES
/s/ *Michele D. Allen*
Michele D. Allen (#4359)
Delia A. Clark (#3337)
4250 Lancaster Pike Suite 230
Wilmington, DE 19805
(302) 234-8600
(302) 397-3930 (fax)
michele@allenlaborlaw.com
delia@allenlaborlaw.com

Dated: March 28, 2023

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Fed. R. App. P. 25(d), the undersigned hereby certifies that on March 28, 2023, a true and correct copy of Plaintiff-Appellant's Brief and Appendix was filed electronically and served upon all other parties *via* the court's ECF system to the following:

Beth Moskow-Schnoll, Esq.
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
moskowb@ballardspahr.com

Jason C. Schwartz, Esq.
Lucas C. Townsend, Esq.
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
jschwartz@gibsondunn.com
ltownsend@gibsondunn.com

**ALLEN & ASSOCIATES**
/s/ *Michele D. Allen*
Michele D. Allen (#4359)
Delia A. Clark (#3337)
4250 Lancaster Pike Suite 230
Wilmington, DE 19805
(302) 234-8600
(302) 397-3930 (fax)
michele@allenlaborlaw.com
delia@allenlaborlaw.com

Dated: March 28, 2023