No. 22-3043

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

EMILY SOUSA,

*Plaintiff-Appellee*,

v.

AMAZON.COM, INC.; AMAZON.COM SERVICES LLC;
LAWRENCE DORSEY, in his individual and professional capacities,

*Defendants-Appellees.*

Appeal From The United States District Court
For The District Of Delaware
No. 1:21-CV-00717, Judge Stephanos Bibas

## BRIEF FOR DEFENDANTS-APPELLEES

Beth Moskow-Schnoll
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE  19801
(302) 252-4447

Jason C. Schwartz
  *Counsel of Record*
Lucas C. Townsend
Anna L. Casey
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

*Counsel for Defendants-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit LAR 26.1.1, Amazon.com, Inc. hereby discloses that it has no parent corporations, and no publicly held company owns 10% or more of its outstanding membership units.  In addition, Amazon.com Services LLC hereby discloses that the sole member of Amazon.com Services LLC is Amazon.com Sales, Inc., and the sole owner of Amazon.com Sales, Inc. is Amazon.com, Inc., and no publicly held company owns 10% or more of the stock of Amazon.com, Inc.  No publicly owned company not a party to this appeal has a financial interest in the outcome of this litigation.

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

STATEMENT OF THE ISSUES PRESENTED.......................................3

STATEMENT OF THE CASE.................................................................3

    I.    Factual Background.................................................................3

    II.    Procedural Background ...........................................................7

SUMMARY OF ARGUMENT .................................................................9

STANDARD OF REVIEW ....................................................................12

ARGUMENT ........................................................................................13

    I.    Sousa Failed To Allege Facts Demonstrating A Severe Or
        Pervasive Hostile Work Environment.................................13

    II.    Sousa Failed To State A Claim For Race Or Sex
        Discrimination. ...................................................................24

        A.    Sousa Did Not Allege She Suffered An Actionable
            Adverse Employment Action....................................25

        B.    Sousa Did Not Allege Circumstances Supporting An
            Inference Of Intentional Discrimination....................34

    III.    Sousa Failed To State A Claim For Retaliation. ..................37

    IV.    Sousa Failed To State A Claim For Quid Pro Quo Sexual
        Harassment. ........................................................................42

CONCLUSION ....................................................................................44

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Andrews v. City of Philadelphia*,
    895 F.2d 1469 (3d Cir. 1990) ......................................................18, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................12, 13

*Barnes v. Nationwide Mut. Ins. Co.*,
    598 F. App'x 86 (3d Cir. 2015) ...........................................................30

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................12, 26, 36

*Betz v. Temple Health Sys.*,
    659 F. App'x 137 (3d Cir. 2016) ........................................................15

*Blango v. City of Philadelphia*,
    No. 22-CV-1487, 2022 WL 17365249 (E.D. Pa. Dec. 1, 2022) ........................18

*Brady v. Wal-Mart Stores, Inc.*,
    531 F.3d 127 (2d Cir. 2008) ..............................................................28

*Burgess v. Dollar Tree Stores, Inc.*,
    642 F. App'x 152 (3d Cir. 2016) ....................................................13, 22

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ..............................................................5

*Burlington Indus., Inc. v. Ellerth*,
    524 U.S. 742 (1998)..........................................................................27

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006)........................................................14, 41, 42

*Burton v. Pa. State Police*,
    612 F. App'x 124 (3d Cir. 2015) ........................................................42

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
 394 F.3d 126 (3d Cir. 2004) ...............................................................15

*Caprio v. Peters*,
 345 F. App'x 824 (3d Cir. 2009) ........................................................28

*Caver v. City of Trenton*,
 420 F.3d 243 (3d Cir. 2005) ...............................................................21

*Chambers v. District of Columbia*,
 35 F.4th 870 (D.C. Cir. 2022).............................................................32

*Clancy-Fisher v. City of Philadelphia*,
 No. 02-CV-3713, 2002 WL 31994283 (E.D. Pa. Oct. 30, 2002) .......16

*Clark v. Phila. Hous. Auth.*,
 701 F. App'x 113 (3d Cir. 2017) ........................................................29

*Cloud v. Brennan*,
 436 F. Supp. 3d 1290 (N.D. Cal. 2020)..............................................38

*Connelly v. Lane Constr. Corp.*,
 809 F.3d 780 (3d Cir. 2016) .........................................................23, 40

*Coulton v. Univ. of Penn.*,
 237 F. App'x 741 (3d Cir. 2007) ........................................................36

*Cross v. Donahoe*,
 No. 12-CV-2670, 2013 WL 4518049 (D.N.J. Aug. 23, 2013)...........18

*DeAngelo v. MAXIMUS/NY Medicaid Choice*,
 No. 19-CV-7957, 2022 WL 3043665 (S.D.N.Y. Aug. 2, 2022) .........29

*Doe v. Mercy Cath. Med. Ctr.*,
 850 F.3d 545 (3d Cir. 2017) ...............................................................42

*Dolan v. Penn Millers Ins. Co.*,
 625 F. App'x 91 (3d Cir. 2015) ..........................................................39

*Durham Life Ins. Co. v. Evans*,
 No. 94-CV-801, 1997 WL 535187 (E.D. Pa. Aug. 4, 1997)..............19

*Eggers v. Moore*,
257 F. App'x 993 (6th Cir. 2007) .......................................................33

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998) ...........................................................................14

*Fasold v. Justice*,
409 F.3d 178 (3d Cir. 2005) ..............................................................41

*Garcia v. Newtown Twp.*,
483 F. App'x 697 (3d Cir. 2012) ........................................................14

*Garnett v. Bank of Am.*,
243 F. Supp. 3d 499 (D. Del. 2017)....................................................27

*Gazdick v. Solis*,
No. 10-CV-1062, 2013 WL 1909576 (M.D. Pa. May 8, 2013) ..........19

*Gladysiewski v. Allegheny Energy Serv. Corp.*,
282 F. App'x 979 (3d Cir. 2008) .................................................33, 41

*Golod v. Bank of Am. Corp.*,
403 F. App'x 669 (3d Cir. 2010) ........................................................27

*Grady v. Cracker Barrel Old Country Store, Inc.*,
No. 06-CV-558, 2007 WL 1959298 (M.D. Pa. July 2, 2007) ............17

*Greer v. Mondelez Glob., Inc.*,
590 F. App'x 170 (3d Cir. 2014) ........................................................14

*Hamera v. County of Berks*,
248 F. App'x 422 (3d Cir. 2007) ........................................................19

*Hampton v. Borough of Tinton Falls Police Dep't*,
98 F.3d 107 (3d Cir. 1996) ................................................................42

*Harlston v. McDonnell Douglas Corp.*,
37 F.3d 379 (8th Cir. 1994) ...............................................................29

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993)..............................................................................15

*Harrison-Harper v. Nike, Inc.*,
 No. 16-CV-4645, 2018 WL 4614158 (E.D. Pa. Sept. 24, 2018)........................16

*Henderson v. United Parcel Serv.*,
 No. 17-CV-13059, 2020 WL 1983481 (D.N.J. Apr. 27, 2020)........................14

*Joiner v. Wal-Mart Stores, Inc.*,
 114 F. Supp. 2d 400 (W.D.N.C. 2000) ..............................................17

*Jones v. Sch. Dist. of Philadelphia*,
 198 F.3d 403 (3d Cir. 1999) ......................................................30

*Jones v. Se. Pa. Transp. Auth.*,
 796 F.3d 323 (3d Cir. 2015) ..................................................8, 38

*Kokinchak v. U.S. Postmaster Gen.*,
 677 F. App'x 764 (3d Cir. 2017) ..................................................15

*Konstantopoulos v. Westvaco Corp.*,
 112 F.3d 710 (3d Cir. 1997) .................................................32, 34

*Koss v. Sullivan Cnty.*,
 No. 00-CV-2802, 2002 WL 1628565 (S.D.N.Y. July 23, 2002)........................35

*Langley v. Merck & Co.*,
 186 F. App'x 258 (3d Cir. 2006) ..................................................29

*Lanza v. Postmaster Gen. of U.S.*,
 570 F. App'x 236 (3d Cir. 2014) ..................................................37

*LeBlanc v. Hill Sch.*,
 No. 14-CV-1674, 2015 WL 144135 (E.D. Pa. Jan. 12, 2015) ..........................40

*LeBoon v. Lancaster Jewish Community Ctr. Ass'n*,
 503 F.3d 217 (3d Cir. 2007) ......................................................40

*LeMaire v. La. Dep't of Transp. & Dev.*,
 480 F.3d 383 (5th Cir. 2007) .....................................................37

*Little v. Chambersburg Hosp.*,
 No. 1:11-CV-01804, 2012 WL 1048820 (M.D. Pa. Mar. 28, 2012)............17, 21

*Mariotti v. Mariotti Bldg. Prod., Inc.*,
No. 3:11-CV-737, 2011 WL 2670570 (M.D. Pa. July 8, 2011) ........................16

*Mieczkowski v. York City Sch. Dist.*,
414 F. App'x 441 (3d Cir. 2011) ................................................................30, 31

*Moore v. City of Philadelphia*,
461 F.3d 331 (3d Cir. 2006) ...............................................................................42

*Morrison v. Carpenter Tech. Corp.*,
193 F. App'x 148 (3d Cir. 2006) ........................................................................30

*Oliver v. Roquet*,
858 F.3d 180 (3d Cir. 2017) ...............................................................................13

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75 (1998) ..............................................................................................19

*Peñalbert–Rosa v. Fortuño–Burset*,
631 F.3d 592 (1st Cir. 2011) ..............................................................................23

*Retzler v. McDonalds*,
No. 20-CV-1256, 2020 WL 1164797 (E.D. Pa. Mar. 10, 2020) .......................21

*Robinson v. Fam. Dollar Inc*,
679 F. App'x 126 (3d Cir. 2017) ........................................................................12

*Roman v. Geisinger W.V. Med. Ctr.*,
No. 20-CV-45, 2022 WL 988373 (M.D. Pa. Mar. 31, 2022) .............................40

*Sarullo v. U.S. Postal Serv.*,
352 F.3d 789 (3d Cir. 2003) ...............................................................................34

*Scott v. New Jersey*,
143 F. App'x 443 (3d Cir. 2005) ........................................................................28

*Shramban v. Aetna*,
262 F. Supp. 2d 531 (E.D. Pa. 2003)..................................................................23

*Shropshire v. Wheeler*,
858 F. App'x 580 (3d Cir. 2021) ...................................................................34, 36

*Simko v. U.S. Steel Corp.*,
992 F.3d 198 (3d Cir. 2021) .......................................................32, 41

*Spence v. New Jersey*,
19-CV-21490, 2021 WL 1345872 (D.N.J. Apr. 12, 2021) ...............................22

*Storey v. Burns Int'l Sec. Servs.*,
390 F.3d 760 (3d Cir. 2004) .............................................................30

*Taylor v. Burwell*,
No. 13-CV-1998, 2014 WL 3547337 (D. Md. July 16, 2014) .........................29

*Thompson v. Kellogg's USA*,
619 F. App'x 141 (3d Cir. 2015) ........................................................37

*Threat v. City of Cleveland*,
6 F.4th 672 (6th Cir. 2021) ..............................................................32

*Tirk v. Dubrook, Inc.*,
673 F. App'x 238 (3d Cir. 2016) .......................................................38

*Torre v. Casio, Inc.*,
42 F.3d 825 (3d Cir. 1994) ..............................................................30

*Toth v. Cal. Univ. of Pa.*,
844 F. Supp. 2d 611 (W.D. Pa. 2012).................................................23

*Twillie v. Erie Sch. Dist.*,
575 F. App'x 28 (3d Cir. 2014) ........................................................37

*United States v. Jiminez*,
498 F.3d 82 (1st Cir. 2007).............................................................33

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013)......................................................................37

*Verdu v. Trs. of Princeton Univ.*,
No. 20-1724, 2022 WL 4482457 (3d Cir. Sept. 27, 2022)...............14, 24, 27, 36

*Waldo v. Consumers Energy Co.*,
726 F.3d 802 (6th Cir. 2013) ...........................................................18

*Weston v. Pennsylvania*,
  251 F.3d 420 (3d Cir. 2001) ............................................................14, 28, 29, 43

*Whetstine v. Woods Servs.*,
  No. 21-CV-02289, 2022 WL 221526 (E.D. Pa. Jan. 24, 2022) ........................43

*White v. Honeywell, Inc.*,
  141 F.3d 1270 (8th Cir. 1998) ............................................................................33

*Zelinski v. Penn. State Police*,
  108 F. App'x 700 (3d Cir. 2004) ........................................................................30

# INTRODUCTION

The district court (Judge Stephanos Bibas, sitting by designation) correctly dismissed this case with prejudice.  Plaintiff Emily Sousa, despite three attempts, failed to plead plausible facts supporting her employment discrimination and retaliation claims against Defendants Amazon.com, Inc., Amazon.com Services LLC (collectively, "Amazon"), and Lawrence Dorsey.  Sousa's Second Amended Complaint principally focused on alleged phone calls with Dorsey, an Amazon manager, that she said made her feel uncomfortable, and on Sousa's temporary ten-day transfer to another facility to cover a staffing shortage during Amazon's peak season (during which brief time she received the same compensation).  Sousa also challenged Amazon's decision not to transfer her to another facility until she returned from medically recommended leave.  The district court analyzed all of the allegations in their entirety, drew reasonable inferences in Sousa's favor, and correctly concluded that Sousa had failed to state a claim.

As the district court explained, Sousa's hostile work environment claim failed because she alleged neither severe nor pervasive discriminatory treatment.  The alleged factual substance of Dorsey's phone calls was much more innocuous than the Complaint's conclusory characterizations of those facts.  As Sousa pled, some of those calls were only about work topics, and they amounted to calls about once per week over a period of three months—hardly unusual for a supervisor interacting

with a new employee.  Sousa's other allegations, even combined with the alleged phone calls, fell short of alleging a hostile work environment.

Sousa's disparate-treatment discrimination and retaliation claims also failed because she did not plead a necessary element: an actionable harm.  Sousa focuses on a temporary ten-day assignment to another facility that she accepted during a staffing shortage in Amazon's peak season.  But she concedes that her title (Shift Manager), pay, and benefits never changed during that brief assignment.  Nor did Sousa plausibly allege that the ten-day assignment affected her prospects for any promotion.  Further, even assuming Amazon's denial of Sousa's transfer request could support a claim (as the district court assumed), Sousa still failed to allege circumstances giving rise to a plausible inference of intentional discrimination or that any protected activity caused Amazon to deny her request.

Finally, the district court correctly dismissed Sousa's quid pro quo claim because she did not allege that her purported rejection of what she perceived to be Dorsey's sexual advances caused any material change in her employment status or benefits.

At every step, the district court analyzed all of Sousa's factual allegations, drew reasonable inferences in Sousa's favor, and applied settled law.  Indeed, the district court did so twice, giving Sousa an opportunity to amend her complaint in light of guidance from the court.  At each turn, however, Sousa was unable to plead

any additional facts to move the needle, relying instead on even more hyperbolic characterizations of those deficient facts.  Thus, Sousa failed to plead plausible facts rising to the level of actionable conduct.  As the district court correctly recognized, the civil rights laws do not give a cause of action for every perceived slight or disappointment in the workplace.  The district court's judgment should be affirmed.

## STATEMENT OF THE ISSUES PRESENTED

1.  Whether Sousa plausibly alleged a hostile work environment claim under Title VII of the Civil Rights Act of 1964 or 42 U.S.C. § 1981.

2.  Whether Sousa plausibly alleged a disparate-treatment discrimination claim under Title VII or Section 1981.

3.  Whether Sousa plausibly alleged a retaliation claim under Title VII or Section 1981.

4.  Whether Sousa plausibly alleged a quid pro quo sexual harassment claim under Title VII.

## STATEMENT OF THE CASE

### I.    Factual Background

Sousa served briefly as an Amazon Shift Manager from June 29, 2020 until December 1, 2020.  Appx75 ¶ 37; Appx103 ¶ 191.  She started at Amazon's Harleysville, Pennsylvania facility but resigned a few weeks later.  Appx76 ¶ 43.  She

then accepted an offer to be reinstated at Amazon's New Castle, Delaware facility. Appx76 ¶¶ 43–45.

Sousa alleged that when she started in New Castle in August 2020, the "Site Proxy," Dorsey, contacted her and made "unwelcome advances" on a series of phone calls. *See, e.g.*, Appx68 ¶ 7; Appx77 ¶ 50; Appx81 ¶ 75; Appx83 ¶ 80; Appx87 ¶ 102. On these calls, Sousa alleged, Dorsey asked about her hobbies, her weekend plans, and for relationship advice and restaurant recommendations. Appx83 ¶ 83; Appx88 ¶ 111. Sousa claimed that Dorsey called her "more than a dozen" times and on fourteen separate days over three months. Appx69 ¶ 8; Appx81 ¶ 75. In one August call, Dorsey allegedly stated he had never been to Sousa's alma mater, the University of Delaware, and would like for "someone to 'show him around'" sometime. Appx82 ¶ 77. Sousa alleged that some calls were "lengthy," and that on one day, between "7:17 PM and 8:24 PM," Dorsey subjected her to "calls [that] lasted more than an hour and a half." Appx83 ¶ 81. As for Sousa's Japanese national origin, Sousa alleged that Dorsey mentioned "that he likes anime" and that "he always hoped to travel to Japan." Appx83–84 ¶¶ 84–85 (also alleging Dorsey remarked that Japanese people

are "polite and non-confrontational"). Sousa never alleged that Dorsey ever harassed her in person, physically, verbally, or otherwise.[1]

During Amazon's peak season, which lasts "roughly from mid-November through Christmas," Dorsey allegedly asked Sousa to provide temporary assistance in a non-manager role at Amazon's facility in Swedesboro, New Jersey to cover a staffing shortage. Appx71 ¶ 15; Appx94 ¶ 139. The assignment lasted at most ten days. *See* Appx71 ¶ 15 (learned about assignment on November 20); Appx102 ¶ 184 (scheduled return to New Castle on December 1). Although Sousa characterized the brief assignment as a "demotion," Appx70 ¶ 12, Sousa never alleged it had any effect on her job title of Shift Manager, pay, or benefits. She acknowledged that Dorsey told her "she did not need to go to New Jersey if she did not want to," Appx98 ¶ 159, and

---

[1] The phone records, Chime messages, and text messages that Sousa incorporated and relied on in her Complaint also revealed important details that contradicted a number of Sousa's key allegations. For example, Sousa alleged that Dorsey called her "on at least fourteen (14) separate days," Appx81 ¶ 75, but phone records revealed calls from Dorsey on just seven separate days, Appx279–80. Sousa also alleged that on September 18, Dorsey "initiated" eight calls to Sousa, Appx84 ¶ 88, but in reality only three of those calls were dialed by Dorsey, Appx279, and Sousa herself had texted Dorsey, asking for advice on "how to stand out" at work, Appx159. Similarly, Sousa alleged that "Dorsey called" Sousa on October 30, Appx88 ¶ 106, but phone records showed that it was Sousa who called Dorsey, Appx279. Sousa alleged that "Dorsey again called" on December 4, Appx103 ¶ 191, but text messages revealed that Sousa had asked Dorsey to call her the day before, Appx178. Because Sousa incorporated these communications by reference by explicitly relying on them in her Second Amended Complaint, the Court may consider them on a motion to dismiss. *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

that Amazon offered to pay for Sousa's hotel stay during the brief assignment, Appx101 ¶ 175. Sousa speculated that the assignment "harmed" her opportunities for a promotion. Appx97 ¶¶ 154–155; Appx98 ¶ 158. But she also conceded she had been working as a manager since June, and her performance assessment was scheduled for the following April. Appx75 ¶¶ 36–37; Appx95 ¶ 143. Thus, Sousa would have been evaluated on at least nine months of managerial work, including for most of the peak season. Sousa also acknowledged that she was not the only employee assigned to New Jersey to cover the staffing shortage, and that Dorsey had assigned a male employee as well. Appx96 ¶ 150.

When Sousa was set to return to New Castle on December 1, she allegedly told Dorsey she planned to resign. Appx102 ¶ 184. Dorsey suggested she "consider taking a leave of absence instead," which she did. Appx72 ¶ 17; Appx102 ¶ 185. Sousa submitted a complaint to Amazon HR about Dorsey on January 11, 2021. Appx103 ¶ 194. Amazon investigated and found her claims unsubstantiated. Appx105 ¶ 204. On a March 19, 2021 call with Amazon representatives (but not Dorsey), while still on leave, Sousa allegedly asked to transfer to another facility, but Amazon allegedly told her that she could apply for a transfer only after returning from physician-recommended leave. Appx105 ¶¶ 203, 207. Sousa remained on leave until July 2021, when she resigned to work for another Amazon-owned company. Appx107 ¶ 214.

## II.    Procedural Background

Sousa filed this lawsuit against Amazon on May 20, 2021, asserting a single claim of race discrimination and harassment under 42 U.S.C. § 1981.  *See* Dkt. 1; Appx20.  After Amazon moved to dismiss, Sousa amended her complaint, adding new allegations and claims for "race, ethnicity, national origin, and/or sex/gender discrimination" and unlawful retaliation under Title VII.  *See* Appx49, 51.  Amazon moved to dismiss again, and Judge Stephanos Bibas, sitting by designation, granted Amazon's motion, dismissing Sousa's First Amended Complaint.  Appx66.  In an accompanying memorandum opinion, the court stated that "the details in [Sousa's] complaint belie" her own allegations of discrimination and retaliation.  Appx57.  The court walked through each claim, identifying the various deficiencies.  Appx59–66. "At root," the court explained, "Sousa identifies only a few offensive remarks from one supervisor and several personal phone calls from another," and "[t]hat does not amount to discrimination."  Appx57.  Even so, the district court granted Sousa leave to amend.  Appx55, 66.

Sousa filed a Second Amended Complaint.  *See* Appx67.  A significant number of Sousa's new allegations were re-characterizations of prior allegations that the district court had already found deficient.  *See, e.g.*, Appx69 ¶ 8 ("unmistakable sexual designs"), Appx77 ¶ 51 ("unwelcome and highly uncomfortable personal phone calls"), Appx81 ¶ 75 (Dorsey's calls "greatly negatively impacted Ms. Sousa's work

environment"). Sousa also added several new allegations about the length and substance of alleged phone calls, *see, e.g.*, Appx82 ¶ 75, and speculated about how Sousa's short stint in New Jersey might have "harm[ed] her chances of promotion," *see, e.g.*, Appx98 ¶ 158.

Amazon again moved to dismiss. Appx119. After full briefing, the district court again issued a memorandum opinion analyzing all of Sousa's allegations and concluding that they failed to state a claim under any of the asserted theories. Appx4. This time, the district court dismissed with prejudice. Appx17.

The district court first held that Sousa failed to plead a hostile work environment, explaining that the topics raised by Dorsey "are not 'sufficiently extreme' to be considered 'severe' harassment or discrimination." Appx9. It also concluded that Sousa failed to allege an actionable adverse employment action that could give rise to a plausible inference of discrimination. Appx11. To be an actionable adverse employment action, the court explained, the alleged misconduct must be "serious and tangible enough to alter [her] compensation, terms, conditions, or privileges of employment." Appx11 (quoting *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015)). The court carefully examined the underlying allegations for each "event" identified by Sousa and explained why most did not rise to the level of "adverse employment actions." Appx11–15. As for Amazon's alleged refusal to transfer her, even assuming it rose to the level of an adverse employment action, the court

held that Sousa failed to allege circumstances that support an inference of discrimination, such as allegations that other employees of other races were granted transfers in similar situations.  Appx15.

The district court likewise concluded that Sousa failed to plead retaliation.  Appx15.  As with the discrimination claim, the court held that most of the alleged misconduct did not rise to the level of an actionable adverse action.  Appx15.  And "though Amazon's refusal to transfer her might count," Sousa pled "no facts showing that her protected activity—reporting Dorsey's behavior—caused Amazon to deny her transfer request."  Appx15.

The district court also dismissed Sousa's quid pro quo sexual harassment claim because she failed to allege her purported rejection of Dorsey led to any change in employment status.  Appx16.  Finally, the court dismissed Sousa's Section 1981 claims because race discrimination and hostile work environment claims under Section 1981 and Title VII have the same elements.  Appx17.  This appeal followed.

## SUMMARY OF ARGUMENT

The district court correctly dismissed Sousa's Second Amended Complaint with prejudice.

**I.**  The district court correctly dismissed Sousa's hostile work environment claim because—stripped of conclusory characterizations—the Complaint did not allege severe or pervasive discriminatory treatment.  Although Sousa argues that

Dorsey "harassed" her through a series of phone calls, Sousa's own allegations (for example, detailing conversations about her alma mater and weekend plans) did not support her conclusory characterizations. She never alleged that Dorsey clearly propositioned her or ever inappropriately touched or physically threatened her in any way or even engaged inappropriately in any way with her in person. In addition, the alleged telephone calls—as pled, about once a week over a three-month period, or as demonstrated by the documents Sousa relied on, about once every two weeks over such period—were not pervasive. The district court considered all of Sousa's allegations as a whole, applied settled law, and correctly concluded that they described only episodic incidents that might at most be characterized as "inappropriate" but were not sufficiently extreme to state a hostile workplace claim.

**II.** The district court correctly dismissed Sousa's discrimination claim.

**A.** Sousa did not allege that she suffered an actionable adverse employment action. She did not plausibly plead that her promotion prospects were materially harmed by her temporary ten-day assignment to another facility to cover a staffing shortage, or that the short assignment itself was an actionable adverse employment action. Without allegations of severe and pervasive discriminatory treatment, Sousa could not support any constructive discharge claim based on her subsequent decisions to take medical leave and to resign.

10

**B.** Even assuming Amazon's decision not to transfer Sousa while she remained on medical leave could support a discrimination claim, Sousa failed to allege circumstances giving rise to an inference of discrimination.  Although Sousa now asks the Court to infer discriminatory intent based on Amazon's purportedly inconsistent "reasoning" on transfer requests, Sousa still fails to identify any alleged facts suggesting that Sousa's gender or race was the reason for any supposed inconsistency.  To the contrary, the fact that Amazon has allowed Sousa (a Japanese woman) to move locations in the past refutes any inference that Amazon's later decision not to transfer Sousa until after she returned to work had anything to do with her race or sex.

**III.**  The district court correctly dismissed Sousa's retaliation claim for multiple reasons.  As with her discrimination claim, Sousa did not allege that she suffered an actionable adverse action.  Because the timeline of the alleged facts did not support an inference of causation, Sousa asks the Court to ignore when the allegedly actionable conduct occurred and focus on when other non-actionable conduct allegedly took place.  That novel theory is not supported by the cases Sousa invokes. *Amicus curiae* the EEOC attempts to save Sousa's retaliation claim by arguing that the district court failed to analyze whether the alleged conduct rose to the level of a "materially adverse action" (as distinct from an "adverse employment action"), but Sousa does not argue that the district court's judgment should be reversed on that

ground, and the argument is outside this appeal.  In any event, Sousa's alleged conduct failed to meet either the discrimination or retaliation standard, which may be why Sousa did not present the EEOC's argument to the district court.

**IV.**  The district court correctly dismissed Sousa's quid pro quo claim because Sousa did not allege a significant change in employment caused by her purported rejection of Dorsey.  Although Sousa argues that Dorsey transferred her to New Jersey because she rejected him, this temporary ten-day assignment (during which her title of Shift Manager, pay, and benefits remained the same) did not change the terms of her employment or benefits.  Furthermore, Sousa never alleged plausible facts showing that her "rebuffing" Dorsey's advances in October 2020 actually caused the allegedly adverse events in November 2020 and March 2021.

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This plausibility determination "will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Robinson v. Fam. Dollar Inc*, 679 F. App'x

126, 131 (3d Cir. 2017) (cleaned up).  The complaint must contain more than "conclusory statements" or "naked assertions devoid of further factual enhancement," and a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (cleaned up); *Oliver v. Roquet*, 858 F.3d 180, 192 (3d Cir. 2017) (stating that a plaintiff's allegations "must reflect 'more than a sheer possibility that a defendant has acted unlawfully'" (quoting *Iqbal*, 556 U.S. at 678)).  This Court's review of a district court's grant of a motion to dismiss under Rule 12(b)(6) is plenary.  *Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x 152, 154 (3d Cir. 2016).

## ARGUMENT

### I.    Sousa Failed To Allege Facts Demonstrating A Severe Or Pervasive Hostile Work Environment.

The district court correctly held that Sousa failed to plead a hostile work environment claim because she did not allege severe or pervasive discriminatory treatment.

"To allege a plausible hostile-work-environment claim under Title VII, a plaintiff must allege that (1) he suffered intentional discrimination based on his being a part of a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination had a detrimental influence on the plaintiff; (4) the discrimination

would have had a detrimental influence on a reasonable person in similar circumstances; and (5) respondeat-superior liability exists." *Verdu v. Trs. of Princeton Univ.*, No. 20-1724, 2022 WL 4482457, at *5 (3d Cir. Sept. 27, 2022).[2]

"The threshold for pervasiveness and regularity of discriminatory conduct is high." *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014). It is "high" "for good reason: 'to ensure that Title VII does not become a general civility code.'" *Henderson v. United Parcel Serv.*, No. 17-CV-13059, 2020 WL 1983481, at *8 (D.N.J. Apr. 27, 2020) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "The mere utterance of an epithet, joke, or inappropriate taunt that may cause offense does not sufficiently affect the conditions of employment to implicate Title VII liability." *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Rather, "[t]he harassment must be so severe or pervasive that it alters the conditions of the [plaintiff's] employment and creates an abusive environment." *Garcia v. Newtown Twp.*, 483 F. App'x 697, 704 n.20 (3d Cir. 2012) (citation

---

[2] The district court held that Sousa's Section 1981 claims failed because her Title VII claims failed, noting that race discrimination and hostile work environment claims under Section 1981 and Title VII have the same elements. Appx17. Sousa does not dispute this holding or argue for a different standard, thereby conceding the point. Accordingly, Amazon will not differentiate between these legal standards.

omitted).  In deciding whether alleged harassment demonstrates a severe or perva-

sive "abusive environment," courts must consider "the frequency of the discrimina-

tory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's

work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  Courts

routinely dismiss hostile workplace claims where the facts do not meet the "severe

or pervasive" standard.  *See, e.g.*, *Kokinchak v. U.S. Postmaster Gen.*, 677 F. App'x

764, 767–68 (3d Cir. 2017); *Betz v. Temple Health Sys.*, 659 F. App'x 137, 142 (3d

Cir. 2016).

Sousa did not clear this "high" bar.  Beginning with her phone calls with

Dorsey, although Sousa contends in her brief that Dorsey harassed her and made

"repeated unwelcome advances" (Sousa Br. 3), the facts alleged did not support

those conclusory statements.  Even under a motion to dismiss standard, courts need

not accept unsupported characterizations.  *See Cal. Pub. Emps. Ret. Sys. v. Chubb

Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) ("[W]e need not credit a complaint's 'bald

assertions' or 'legal conclusions.'").  Here, Sousa's allegations, viewed collectively,

did not support the inference of severe or pervasive harassment.  In fact, Dorsey's

alleged statements are at most inappropriate only because they refer to personal ra-

ther than work issues.  *See, e.g.*, Appx82 ¶ 76 (asked Sousa "what she thought of his

haircut"); Appx82 ¶¶ 77–79 (asked where Sousa "went to college" and mentioned

he "would love for someone to 'show him around'" that campus); Appx83–85
¶¶ 84–87 (said he "likes anime," mentioned he "always hoped to travel to Japan,"
and suggested that Sousa could be his "travel guide"); Appx84 ¶ 88 (inquired about
Sousa's "plans for the upcoming weekend"); Appx88 ¶ 108 (said he was "in Lan-
caster with a friend"); Appx88 ¶ 111 (asked for "restaurant suggestions" and "advice
with his girlfriend"); Appx91 ¶ 121 ("raised the possibility of spending time with
Ms. Sousa outside of work").  They only derive their supposedly offensive meaning
through Sousa's conclusory characterizations.  *See, e.g.*, Appx83 ¶ 82 (characteriz-
ing calls as "intrusive"); Appx101 ¶ 87 (asserting "Dorsey's solicitations were ob-
vious invitations to go on . . . 'dates'").

  As the district court noted, Dorsey never said anything sexual to Sousa.  Sousa
argues that this conclusion was "incorrect even on the face of the allegations," but
she never identifies a specific factual allegation in support of that argument.  Sousa
Br. 17.  The actual alleged content was a far cry from the type of "objectively lewd"
statements that "rise to the level of severe."  *Harrison-Harper v. Nike, Inc.*, No. 16-
CV-4645, 2018 WL 4614158, at *6–7 (E.D. Pa. Sept. 24, 2018), *aff'd*, 788 F. App'x
846 (3d Cir. 2019); *see also Mariotti v. Mariotti Bldg. Prod., Inc.*, No. 3:11-CV-737,
2011 WL 2670570, at *4 (M.D. Pa. July 8, 2011) (granting motion to dismiss be-
cause "insensitive and perhaps offensive comments" "are insufficient to make out a
hostile work environment claim"); *Clancy-Fisher v. City of Philadelphia,* No. 02-

CV-3713, 2002 WL 31994283, at *3 (E.D. Pa. Oct. 30, 2002) (granting motion to dismiss although alleged harasser's "offhand comments to plaintiff may be deemed obnoxious" because "conduct certainly is not severe and pervasive enough 'to alter the terms and conditions'" of plaintiff's employment).

Although Sousa now argues that Dorsey "pressur[ed] Sousa to go out with him" multiple times (Sousa Br. 14), her Complaint never alleged that Dorsey clearly propositioned her or even asked her on a date, much less that he ever inappropriately touched or physically threatened her in any way. *See Grady v. Cracker Barrel Old Country Store, Inc.*, No. 06-CV-558, 2007 WL 1959298, at *7 (M.D. Pa. July 2, 2007) (no hostile environment where manager "never touched [plaintiff] in an inappropriate manner" but allegedly had made "inappropriate sexual comments" and made her "feel uncomfortable"); *see also Little v. Chambersburg Hosp.*, No. 1:11-CV-01804, 2012 WL 1048820, at *5 (M.D. Pa. Mar. 28, 2012) (granting motion to dismiss where plaintiff "does not plead that any humiliating or physically threatening statements were made").

Even if Dorsey's alleged comments were seen as flirting, "[i]t simply is not illegal to flirt in the workplace." *Joiner v. Wal-Mart Stores, Inc.*, 114 F. Supp. 2d 400, 409 (W.D.N.C. 2000). Furthermore, Sousa did not allege that Dorsey ever subjected her to an unwanted or uncomfortable conversation in person, and courts have rejected hostile work environment claims based on comparable allegations. *See*

*Blango v. City of Philadelphia*, No. 22-CV-1487, 2022 WL 17365249, at *8 (E.D. Pa. Dec. 1, 2022) (granting summary judgment because "alleged mistreatment in workplace relations" was not severe or pervasive where plaintiff-employee "only communicated with [purported harasser] about two times a week by phone or radio"); *see generally Cross v. Donahoe*, No. 12-CV-2670, 2013 WL 4518049, at *6 (D.N.J. Aug. 23, 2013) (granting motion to dismiss because "discriminatory acts alleged . . . did not create an abusive work environment which was permeated with discrimination"). This further confirms that Sousa failed to allege severe or pervasive discriminatory treatment.

*Amicus curiae* the EEOC argues that even if Dorsey's conduct was "not sexual in nature," it could still support a hostile work environment claim. EEOC Br. 18. That argument is a red herring. Other plaintiffs with other facts may be able to allege "[i]ntimidation and hostility toward women" without "explicit sexual advances," *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1485 (3d Cir. 1990) (citation omitted), but Sousa did not do so here. While "non-sexual conduct may be illegally sex-based where it evinces anti-female animus," *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 815 (6th Cir. 2013) (citation omitted), Sousa's Complaint did not include factual allegations that evince anti-female animus—only neutral facts and Sousa's own conclusory interpretations, which carry no weight on a motion to dismiss. EEOC's

authority is not to the contrary: the *Andrews* plaintiffs were addressed using "obscenities," 895 F.2d at 1472, the *Oncale* plaintiff was "physically assaulted . . . in a sexual manner," *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 77 (1998), and the *Durham* plaintiff was "grabbed" by a superior, "her walk and speech" was "mimicked" "during a training session," and "her files" were stolen by coworkers, *Durham Life Ins. Co. v. Evans*, No. 94-CV-801, 1997 WL 535187, at *3–*4 (E.D. Pa. Aug. 4, 1997), *aff'd,* 166 F.3d 139 (3d Cir. 1999).  Such objectively severe or pervasive factual allegations are entirely missing here.

Not only did Sousa fail to allege *severe* discriminatory treatment, she independently failed to allege that any alleged conduct was *pervasive*.  Sousa alleged that Dorsey called her about once a week for three months.  Even assuming those allegations are true, roughly one phone call a week from a supervisor is not "pervasive." *See Hamera v. County of Berks*, 248 F. App'x 422, 425–26 (3d Cir. 2007) (nine disparaging comments not pervasive); *Gazdick v. Solis*, No. 10-CV-1062, 2013 WL 1909576, at *20 (M.D. Pa. May 8, 2013) (concluding "several phone calls a day" "do not amount to a hostile work environment").  This is particularly striking given that she even alleged that some of these calls were exclusively about work and not even allegedly offensive. *See, e.g.*, Appx86 ¶ 100; Appx100 ¶ 170.

Although the district court did not rely on them—and this Court does not need them to affirm—the phone records, text messages, and instant messages that were

incorporated in Sousa's Second Amended Complaint (and included in the Appendix) further undermine Sousa's conclusory allegations of pervasiveness.  The phone records reveal that Sousa initiated some of the calls that she objected to in her Complaint.  *See, e.g.*, Appx279 (Sousa calling Dorsey five times on September 18).  The Chime text messages also were overwhelmingly related to Sousa's work, and the vast majority were initiated by Sousa.  *See, e.g.*, Appx214 (Sousa stating: "Thank you for answering my millions of questions"); Appx247 (Sousa stating: "I feel like I[']m always bothering you").  Nowhere in these messages did Dorsey mention Sousa's race or sex, ask to fraternize with Sousa outside of work, or ask about Sousa's boyfriend or other personal matters.

Sousa insists the district court "should have considered the harassing incidents cumulatively," Sousa Br. 13, but the court did just that.  The district court methodically considered "all the circumstances" alleged: the Dorsey phone calls "combined with" Sousa's "other allegations."  Appx9–10; *see also* Appx11 ("I must consider these incidents as a whole, not in isolation.").  Sousa disagrees with the district court's conclusion that these alleged incidents collectively did not rise to the level of severe or pervasive harassment, but the district court overlooked nothing.

Sousa attempts to bolster her claim with other purportedly offensive incidents, but they are largely based on rumor, hearsay, and disconnected over time and geography.  *See* Appx69 ¶ 9 (Dorsey allegedly told another coworker that someone in

20

another facility had compared Sousa to an adult film star); Appx78 ¶ 55 (Dorsey allegedly remarked to a coworker before Sousa had started work in Delaware that she was "really pretty"); Appx79 ¶ 58 (unidentified coworkers allegedly mistook Sousa for a former "Asian manager").  At most, those are the kind of "stray remarks" that do not create an abusive environment, even if some of them are "distasteful, crude and inappropriate."  *Retzler v. McDonalds*, No. 20-CV-1256, 2020 WL 1164797, at *3  (E.D. Pa. Mar. 10, 2020).

Equally unavailing is Sousa's reliance on rumored, secondhand accounts of alleged conduct directed at other employees.  *See, e.g.*, Appx85 ¶ 91 (alleging that Sousa was told Dorsey "gave out his phone number" to other female employees); Appx85 ¶ 96 (alleging Sousa was told that Dorsey commented on another employee's physical appearance).  Even if Sousa had actually overhead such statements firsthand, it would not be so severe or pervasive to constitute a hostile work environment.  *See, e.g.*, *Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005) ("[C]omments referring to other individuals that were merely overheard by [Plaintiff] are the sorts of 'offhanded comments and isolated incidents' that the Supreme Court [has] cautioned should not be considered severe or pervasive enough to constitute a hostile work environment." (citation omitted)); *see also Little v. Chambersburg Hosp.*, No. 11-CV-1804, 2012 WL 1048820, at *5 (M.D. Pa. Mar. 28, 2012)

("[W]e cannot conclude that the conduct was severe; indeed, only one incident directly concerned the Plaintiff."). *A fortiori*, mere rumors of such statements failed to support Sousa's hostile work environment claim.

Sousa's remaining arguments should be rejected. Contrary to Sousa's and the EEOC's characterization, the district court *did* draw reasonable inferences in Sousa's favor. Sousa Br. 17–18; EEOC Br. 20. Rather than assuming that Dorsey "somehow" was not romantically interested in Sousa, as Sousa argues (at 17), the district court assumed that some of Dorsey's conduct "could be taken as sexual advances." Appx16. And while Sousa argues (at 18) that the district court contradicted itself by elsewhere noting that Dorsey's statements were not "sexual," there was no contradiction. The district court correctly noted that none of Dorsey's statements were objectively sexual, but acknowledged the possibility that Sousa could have understood them to be indicating romantic interest. Even drawing that inference in Sousa's favor, the district court properly concluded that the alleged conduct, which was neither hostile nor abusive, did not amount to severe harassment. *See Burgess*, 642 F. App'x at 155 (affirming dismissal under Rule 12(b)(6) of hostile work environment claim despite allegations of "vague sexual advance" in which supervisor touched plaintiff's hair); *Spence v. New Jersey*, 19-CV-21490, 2021 WL 1345872, at *6 (D.N.J. Apr. 12, 2021) (allegations that alleged harasser had "asked [plaintiff] 'inappropriate, personal questions'" failed to state a hostile work environment

claim); *see also Shramban v. Aetna*, 262 F. Supp. 2d 531, 534–36 (E.D. Pa. 2003) (granting summary judgment to employer where "Plaintiff alleges" supervisor asked "inappropriate" and "personal questions about [plaintiff's] boyfriend"), *aff'd*, 115 F. App'x 578 (3d Cir. 2004); *Toth v. Cal. Univ. of Pa.*, 844 F. Supp. 2d 611, 633 (W.D. Pa. 2012) ("An objectively reasonable employee would not have found [supervisor's] invitations to meet for a 'cup of coffee' to be hostile or abusive.").

As for the anonymous phone calls Sousa allegedly received in March 2021 following the completion of Amazon's investigation, the district court drew another inference in Sousa's favor, acknowledging that the alleged calls could be perceived as "creepy" and "understandably distressing." Appx10. Even with that inference, however, the district court correctly concluded that the alleged anonymous calls (which contained no sexual or sex-based content) did not rise to the level of actionable conduct. Appx10. Notably, Sousa did not allege that the caller was actually Dorsey, but only that the "voice . . . sounded like Dorsey." Appx108–110 ¶¶ 218–232. The allegation was at most speculative and not entitled to a presumption of truth. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (noting that "some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual" (quoting *Peñalbert–Rosa v. Fortuño–Burset*, 631 F.3d 592, 595 (1st Cir. 2011))).

Contrary to Sousa's and the EEOC's suggestions otherwise, the district court never held that Sousa's hostile work environment claim failed because it was not analogous to "extreme examples." Sousa Br. 13; *see also* EEOC Br. 22. At most, the district court mentioned other cases to underscore that Sousa did not allege severe harassment, as required by Third Circuit case law. The district court's analysis followed this Court's normal mode of assessing claims of this type.

In short, because Sousa alleged neither severe nor pervasive discriminatory treatment, the district court correctly dismissed her hostile work environment claim.

## II.    Sousa Failed To State A Claim For Race Or Sex Discrimination.

The district court also properly dismissed Sousa's disparate-treatment discrimination claim. "To allege plausibly a disparate-treatment claim under Title VII, a plaintiff must allege that (1) he is a member of a protected class, (2) he is qualified for the position he sought to retain or attain, (3) he suffered an adverse employment action, and (4) the adverse action occurred under circumstances that may give rise to an inference of intentional discrimination." *Verdu*, 2022 WL 4482457, at *5. Sousa's disparate-treatment claim failed because she did not plausibly allege she suffered an adverse employment action in circumstances that would give rise to an inference of intentional discrimination.

**A.      Sousa Did Not Allege She Suffered An Actionable Adverse Employment Action.**

Sousa's disparate-treatment discrimination claim failed (among other reasons) because she did not plead she suffered an actionable adverse employment action.  None of Sousa's theories stated a claim.

**1.**  Sousa failed to make out a failure-to-promote claim.  *See* Sousa Br. 19–20. Sousa did not allege that she was, in fact, denied or delayed in receiving any promotion.  Instead, she speculated that her ten-day temporary assignment to a New Jersey facility hurt her later chances of promotion in the spring of 2021 because she would not be reviewed during Amazon's "peak" season.  Appx70–71 ¶¶ 13–15.  But her own allegations undercut her claim.  For example, Sousa conceded that Amazon's "peak season" is "roughly from mid-November through Christmas," Appx71 ¶ 15, and that her ten-day assignment was in November.  Even assuming that feedback from Sousa's Delaware colleagues was "critical" to her promotion prospects, Appx70 ¶ 13, Sousa's supervisors and subordinates would have observed a month of Sousa's "peak season" performance in Delaware and nine months of non-peak season performance dating back to August.  *See* Appx13 (citing Appx75 ¶¶ 36–37; Appx95 ¶ 143).  It is therefore not plausible to infer that Sousa's ten-day assignment in November during a staffing shortage had any material impact on her promotion prospects or itself constitutes an adverse employment action, as discussed below.

In addition, Sousa conceded that Dorsey also transferred a male employee to

New Jersey along with Sousa, Appx96 ¶ 150, undercutting her assertion that the temporary assignment was because of her race or gender.  And as Sousa pled, Dorsey told her she did not need to accept the assignment "if she did not want to."  Appx98 ¶ 159. It is equally plausible that Sousa's willingness to pitch in and help with alleged "manual labor" during a period of staffing shortage would have helped her promotional opportunities.  *See Twombly*, 550 U.S. at 557 (holding that allegations must be more than "merely consistent with" alleged misconduct and a complaint should be dismissed when there is an "obvious alternative explanation" for a defendant's alleged conduct that is not unlawful).

Invoking another imagined slight, Sousa suggested that she was wrongfully denied a promotion in November 2020.  Appx94 ¶ 137.  According to Sousa, Amazon asked her if she would accept a transfer to a new Amazon facility, and Sousa declined. Appx93 ¶ 136.  Amazon allegedly also asked a white male employee to accept a transfer to that facility and offered a promotion if he accepted, and the male employee accepted.  Appx94 ¶ 137.  From these allegations, Sousa concluded that she was discriminatorily denied a promotion, but the conclusion does not follow.  Sousa never alleged that she and this male employee were even offered the same position at the "new Amazon facility."  *See* Appx93 ¶ 136; Appx94 ¶ 138.  Sousa did not allege what the other employee's position became or what the qualifications for that position were.

*Golod v. Bank of Am. Corp.*, 403 F. App'x 669, 702 (3d Cir. 2010) (affirming dismissal order because plaintiff "did not provide any factual allegations regarding those promotions, who rejected her promotion requests and whether she was, in fact, qualified to fill those positions"); *see also Garnett v. Bank of Am.*, 243 F. Supp. 3d 499, 510 (D. Del. 2017) (granting summary judgment where plaintiff testified "she did not know the qualifications for the . . . position, how the decision for the promotion was made, or who made the decision"). And beyond alleging that the male employee was also a Level 4 manager, Sousa pled no facts to suggest this employee was actually a valid comparator. *See Verdu*, 2022 WL 4482457, at *5 (affirming dismissal order where plaintiff had "not alleged enough commonalities to show that [plaintiff and purported comparator] are sufficiently alike to be considered valid comparators").

**2.** Sousa's temporary ten-day assignment also was not an adverse action. *See* Sousa Br. 20–22. Sousa labels this temporary assignment a demotion, but demotions are characterized by "a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Here, although she was asked "to perform Level 1 work," Appx99 ¶ 168, Sousa's job title of Shift Manager did not change, and her wage and benefits remained the same. And again, Sousa conceded that Dorsey also told her she did not need to accept the assignment "if she did not want to." Appx98 ¶ 159.

While Sousa and the EEOC complain that she was required to perform "manual labor" during the brief assignment, Sousa Br. 21; EEOC Br. 1, they never dispute that this assignment lasted *ten days* at most.  And contrary to the EEOC's suggestion otherwise (EEOC Br. 26), it was not error for the district court to consider the temporary nature of the assignment.  Given the assignment's "temporary nature" and the fact it was "not permanent[]," it never "changed or altered [her] employment status in any way." *Weston*, 251 F.3d at 431; *see also Scott v. New Jersey*, 143 F. App'x 443, 446–47 (3d Cir. 2005) (holding "as a matter of law . . . transfers were not adverse employment actions" where there was "the possibility that [plaintiffs] could return" to their original location).  The EEOC's authorities are not to the contrary.  For example, the Third Circuit did not hold that a temporary transfer was an adverse employment action as a matter of law; at most, it has noted that a month-long assignment—that lasted about three times the length of Sousa's holiday assignment—may constitute a "discrete" act triggering the 45-day consultation deadline for a federal employee's Rehabilitation Act claim.  *See Caprio v. Peters*, 345 F. App'x 824, 827 (3d Cir. 2009); *see also Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) (concluding that a transfer was an adverse employment action when employee was not returned back to desired work location).

Here, such a short, voluntary temporary assignment with no consequences for Sousa's career does not rise to the level of an actionable adverse employment action.

*See Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) ("Changes in duties or working conditions that cause no materially significant disadvantage . . . are insufficient."); *Taylor v. Burwell*, No. 13-CV-1998, 2014 WL 3547337, at *6 (D. Md. July 16, 2014) (finding a three-month assignment "below [the plaintiff's] pay grade" was not an adverse action). This is especially true given that Sousa took this temporary assignment during a staffing shortage. *See DeAngelo v. MAXIMUS/NY Medicaid Choice*, No. 19-CV-7957, 2022 WL 3043665, at *19 n.20 (S.D.N.Y. Aug. 2, 2022) ("[B]eing asked to provide site coverage . . . [is] not 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'").

The mere possibility that an employer's action might later affect an employee's career prospects is not sufficiently tangible to constitute a cognizable adverse action. This Court has held that even the "presumed" effect of negative performance reviews and written reprimands is not sufficiently tangible under Title VII. *See, e.g.*, *Weston*, 251 F.3d at 431; *Clark v. Phila. Hous. Auth.*, 701 F. App'x 113, 117 (3d Cir. 2017) (explaining that a plaintiff "must allege facts from which it could be inferred that the unfavorable performance review adversely affected the terms or conditions of her employment"). The EEOC's authorities (at 26–27) also show that courts routinely evaluate whether a transfer had an *actual* impact on a plaintiff's career when assessing whether it qualifies as an adverse employment action. *Compare Langley v. Merck & Co.*, 186 F. App'x 258, 260 (3d Cir. 2006) (concluding that there was no adverse

action because a plaintiff's "opportunities for advancement remain the same and that the reassignment did not negatively impact her career opportunities"), *and Barnes v. Nationwide Mut. Ins. Co.*, 598 F. App'x 86, 90 (3d Cir. 2015) (noting that "a reassignment to a more inconvenient job did not constitute adverse employment action"), *with Zelinski v. Penn. State Police*, 108 F. App'x 700, 702 (3d Cir. 2004) (concluding that a transfer which was not alleged to be temporary was an adverse action), *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 412 (3d Cir. 1999) ("As a result of the first transfer, he lost his opportunity to teach physics."), *and Torre v. Casio, Inc.*, 42 F.3d 825, 828, 831 n.7 (3d Cir. 1994) (transfer to "dead-end job" caused plaintiff to be "terminated as part of a reduction in force").

Even if the Court were to credit Sousa's conclusory speculation, her own allegations preclude her from establishing an adverse action because she never returned to work in New Castle after her temporary assignment and instead went on extended leave before resigning.  For an employer's action to be "adverse," that action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."  *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (citation omitted).  If an employee voluntarily leaves her employment before it can be determined whether any such material change does, in fact, occur, the action is not adverse as a matter of law.  *Mieczkowski v. York City Sch. Dist.*, 414 F. App'x 441, 447 (3d Cir. 2011); *see also Morrison v. Carpenter Tech. Corp.*, 193 F.

App'x 148, 154 (3d Cir. 2006) (affirming finding that the plaintiff, who received a "corrective performance review," had not suffered an adverse action because he did not "identify, much less establish, any harm or injury" that resulted from that review). In *Mieczkowski*, for example, the Court rejected the plaintiff's theory that two letters of reprimand constituted adverse actions because she "never returned to work after the second reprimand was issued" and retired after exhausting her leave. 414 F. App'x at 444, 447 n.4.

That is exactly what Sousa alleged she did here. She never returned to work as scheduled after her short assignment. Appx102 ¶ 184.[3] Instead, she immediately went on an extended leave of absence and then resigned in July 2021 to accept a different job. Appx102–103 ¶¶ 184, 191; Appx107 ¶ 214. As a result, the brief gap during which she was not observed by her direct reports had no impact on her career at Amazon (even assuming it could or would have if she had returned). Therefore, the brief assignment was not an adverse action. *Mieczkowski*, 414 F. App'x at 447 n.4.

---

[3] Again, Sousa's incorporated-by-reference text messages (which can, but need not, be considered) belie her claim that the assignment was harmful or demeaning. Those messages reveal Sousa voluntarily extended her temporary assignment after Dorsey asked her to return to Delaware. *See* Appx172–173 (Sousa texting that she would "finish out the week" in New Jersey).

The EEOC invites this Court to overrule its requirement that an adverse employment action be "serious and tangible."  EEOC Br. 27–29.  But even under the standard urged by the EEOC, Sousa's allegations fall short because she did not allege that she actually lost a promotion opportunity because of her brief assignment.  *See Threat v. City of Cleveland*, 6 F.4th 672, 678 (6th Cir. 2021) (holding that an adverse action "is actionable only when it is . . . 'material'"); *Chambers v. District of Columbia*, 35 F.4th 870, 875 (D.C. Cir. 2022) (en banc) (holding that an action that "deprives an employee of an employment opportunity offered to a similarly situated colleague" could support a discrimination claim).  In any event, the EEOC's "serious and tangible" argument (which it admits conflicts with Third Circuit precedent) should be rejected because it was not presented to the district court.  *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 205 (3d Cir. 2021) ("It is well-established that arguments raised for the first time on appeal are not properly preserved for appellate review.").  Nor is it raised by Sousa now.  *See id.* at 206 (rejecting the EEOC's attempt to "expand the scope of an appeal with issues not presented by the parties on appeal" (citation omitted)).

**3.**  Finally, Sousa did not adequately plead that she suffered a constructive discharge.  *See* Sousa Br. 22–23.  Because Sousa did not plead a hostile work environment claim, she cannot make out a constructive discharge claim as a matter of law.  *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 718 (3d Cir. 1997).

Aside from insisting she alleged a hostile work environment claim, Sousa never contests this straightforward legal point about the appropriate standard.

Sousa asserts in passing that Amazon "drove her to take a medical leave" (Sousa Br. 19), but this undeveloped assertion is inadequate to preserve a challenge to the district court's ruling. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Gladysiewski v. Allegheny Energy Serv. Corp.*, 282 F. App'x 979, 981 (3d Cir. 2008) (quoting *United States v. Jiminez*, 498 F.3d 82, 88 (1st Cir. 2007)). Here, the district court concluded that Sousa had not plausibly alleged that "Amazon forced her medical leave" because that claim was another attempt to state a "constructive-discharge claim," which "requires a showing of harassment greater than the showing needed for hostile work environment." Appx14. On appeal, Sousa offers no argument challenging the district court's ruling, thus waiving the issue. Regardless, the district court's conclusion was correct: asserting that Amazon forced her to take medical leave is just another attempt to argue that Amazon constructively discharged her. *See Eggers v. Moore*, 257 F. App'x 993, 995 (6th Cir. 2007) (treating allegations that an employer placed an employee on "unpaid medical leave" as allegations of a constructive discharge); *White v. Honeywell, Inc.*, 141 F.3d 1270, 1278–79 (8th Cir. 1998) (evidence that a plaintiff was "forced . . . to take an unpaid medical leave of

absence" could support constructive discharge claim). And as the district court explained (and Sousa has not disputed), because Sousa did not plead sufficiently severe or pervasive discriminatory treatment to support a hostile work environment claim, she cannot sustain a constructive discharge claim. *See Konstantopoulos*, 112 F.3d at 718.

### B. Sousa Did Not Allege Circumstances Supporting An Inference Of Intentional Discrimination.

The district court "assume[d] without deciding" that Amazon's alleged refusal to transfer Sousa when she was still on medical leave could qualify as an adverse employment action. Appx14. Even so, the district court correctly held that Sousa still failed to allege circumstances that "give rise to an inference of intentional discrimination" based on that action. Appx14 (citation omitted).

The Third Circuit requires "pleading at least some factual material from which a plausible inference of discrimination can be drawn." *Shropshire v. Wheeler*, 858 F. App'x 580, 583 (3d Cir. 2021); *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (affirming dismissal of discrimination claim where plaintiff "can not establish that [purported adverse employment action] raises an inference of discriminatory animus"). Here, Sousa alleged only that Amazon denied her request to transfer to another facility while she remained on a medical leave of absence, and declared Amazon's stated concern with "fairness" to other employees to be "[n]onsensical[]." Appx105 ¶ 207. But neither the alleged decision nor the stated reasons

supported an inference of discrimination.  Tellingly, Sousa did not allege that Amazon granted transfer requests from other employees who are male or of different races while they were on medically recommended leave—allegations that might suggest a facially neutral decision and policy was a pretext for intentional discrimination or allege that Dorsey was involved in this decision in any way.  Sousa instead argues that the district court "held" that "comparator evidence is required" (Sousa Br. 23), but that is not true.  At most, the district court noted the absence of these comparator allegations in concluding that the Complaint, as a whole, failed to give rise to an inference of intentional discrimination.  Appx15.

Instead of identifying allegations that would even suggest Amazon's transfer decision was based on race or gender, Sousa asks the Court to infer that Amazon "provided false reasoning" for its decision "in light of Sousa's previous transfer" in 2020 from Harleysville to New Castle.  Sousa Br. 25.  But Sousa's own allegations show that her situation was materially different in 2020: she had resigned from the company and was then rehired to an open position at another facility.  Appx76 ¶¶ 43–45.  In 2021, Sousa did not resign but instead was on medically recommended leave.  Appx101 ¶ 177; Appx102–103 ¶¶ 185–86, 191; Appx106 ¶ 212.  Requiring employees on medical leave to return to work with their doctor's permission before transferring them to new job assignments is commonplace, entirely reasonable, and does not support an inference of intentional discrimination.  *See, e.g.*, *Koss v. Sullivan*

*Cnty.*, No. 00-CV-2802, 2002 WL 1628565, at *1 (S.D.N.Y. July 23, 2002) (granting summary judgment on failure-to-promote claim where "defendant declined to consider the promotion" request until the employee "returned" from leave because the employee admittedly refused to return to work).

Even assuming arguendo there was some inconsistency on Amazon's part (there was not), Sousa did not allege any facts to support an inference that Sousa's race or gender was the *reason* for the inconsistency. Quite the opposite. The very fact that Amazon decided to allow Sousa (a Japanese woman) to move locations in 2020 belies any argument that Amazon's decision not to allow her to transfer in 2021 was based, in any way, on her status as a Japanese woman. *Cf. Coulton v. Univ. of Penn.*, 237 F. App'x 741, 749 (3d Cir. 2007) (The fact that a fired employee's replacement is of the same race "reduces the likelihood that [the fired employee] was terminated on the basis of his race."); *Verdu*, 2022 WL 4482457, at *5 (affirming a dismissal order because plaintiff failed to allege he "was treated less favorably than similarly situated employees who are not in his protected class" (cleaned up)).

Regardless, when alleged behavior is "consistent with non-discriminatory motives, including run-of-the-mill bad management," it does not "give rise to a reasonable inference" of discrimination. *Shropshire*, 858 F. App'x at 583 (citing *Twombly*, 550 U.S. at 557). Here, Sousa speculates that Amazon must have been motivated by race or gender animus, but that is not enough to survive a motion to dismiss. *See*

*Twillie v. Erie Sch. Dist.*, 575 F. App'x 28, 31–32 (3d Cir. 2014) (affirming dismissal order because "other than [plaintiff's] subjective belief that race played a role in [employer's] decisions, she did not otherwise raise the inference that these decisions were based on discriminatory grounds"). For this additional reason, the district court's judgment should be affirmed.

### III.    Sousa Failed To State A Claim For Retaliation.

The district court correctly held that Sousa failed to plead a retaliation claim. To do so, a plaintiff must plead that she engaged in protected activity, she suffered a cognizable adverse action, and there was a causal connection between the two. *Lanza v. Postmaster Gen. of U.S.*, 570 F. App'x 236, 239 (3d Cir. 2014). As to causation, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Therefore, Sousa must allege facts showing that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action." *Thompson v. Kellogg's USA*, 619 F. App'x 141, 144 (3d Cir. 2015) (citation omitted).

Sousa's retaliation claim failed for many reasons. For one, Sousa's purported "rebuffing" of Dorsey's alleged "advances" does not constitute "protected activity." *See, e.g.*, *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 389 (5th Cir. 2007) ("rejecting" supervisor's advances did not "constitute[] a protected activity"). If it

did, "every harassment claim would automatically state a retaliation claim as well." *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1299–300 (N.D. Cal. 2020) (citation omitted).

For another, Sousa did not establish causation. Sousa did not plead any facts supporting a plausible inference that she was selected for the temporary holiday assignment because she supposedly rebuffed Dorsey; to the contrary, she alleged that she was given this temporary assignment along with a *male* employee. Appx96 ¶ 150. Sousa argues that "progressing retaliation" began in November 2020 and continued through March 2021 through a series of seemingly disconnected actions taken by different actors. In Sousa's view, all of these events trace back to her supposed "rebuffing" of Dorsey's advances in October 2020—although that timeframe is not alleged in the complaint. Sousa Br. 26–27. Even if Sousa could amend her pleadings in this way (she cannot), her alleged chronology (which is all she put forward) does not plausibly allege causation. *Tirk v. Dubrook, Inc*., 673 F. App'x 238, 241 (3d Cir. 2016) ("[W]e have never held that a temporal gap of one month alone sufficiently demonstrates a causal connection."); *see also Jones*, 796 F.3d at 331 (stressing "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred" (citation omitted)). In any event, the district court correctly concluded that the allegedly retaliatory actions that

Sousa identified in November 2020—the supposed denial of a promotion opportunity and the temporary ten-day assignment—were not actionable conduct to support a retaliation claim.

The only action that the district court concluded "might count"—the March 2021 denial of a transfer request—is even further afield. Appx15. That action came almost six months after Sousa's purported "rebuffing" in October 2020. *Dolan v. Penn Millers Ins. Co.*, 625 F. App'x 91, 94 (3d Cir. 2015) ("A proximity of three months . . . is insufficient to establish a causal connection."); *see also Jones*, 796 F.3d at 331 ("gap of nearly three months" did not establish causal link). Nor did Sousa include allegations tying Dorsey to the decision to deny her transfer request. In fact, she did not allege that Dorsey was even on the call in which another Amazon representative allegedly told Sousa that she must apply for a transfer "after returning to work." Appx105 ¶ 207. In passing, Sousa mentions her January 2021 complaint concerning Dorsey (Sousa Br. 27), but she again pled no facts even suggesting that this complaint was the but-for cause of Amazon's denial of her transfer request, and failed even to allege that any decisionmaker had knowledge of the complaint.

Attempting to gloss over her various pleading deficiencies, Sousa asks the Court to disregard when Amazon allegedly denied her transfer request and instead look at when other, non-actionable conduct allegedly occurred. Sousa Br. 26–28. Adopting this novel approach would eviscerate the temporal proximity standard, and

courts routinely reject similar invitations. *See Roman v. Geisinger W.V. Med. Ctr.*, No. 20-CV-45, 2022 WL 988373, at *12 (M.D. Pa. Mar. 31, 2022) (concluding plaintiff did not establish causation between protected activity and termination as the "alleged antagonizing actions occurring after" the alleged protected activity but before the termination "were not materially adverse actions"); *LeBlanc v. Hill Sch.*, No. 14-CV-1674, 2015 WL 144135, at *19 (E.D. Pa. Jan. 12, 2015) (concluding that "the Amended Complaint does not plausibly allege . . . a causal connection between protected activity and a materially adverse employment action because [the identified conduct] is not, on its own, a materially adverse employment action").

Sousa's authority is not to the contrary. In *LeBoon v. Lancaster Jewish Community Center Association*, the Third Circuit held that "although the evidence in the record clearly shows a tense relationship between [the plaintiff and a supervisor], it does not sustain the inference that it was caused by [the plaintiff's] protected activity." 503 F.3d 217, 234 (3d Cir. 2007). So even if Sousa had alleged "a tense relationship," she still must allege facts to support an inference that the tense relationship was caused by her alleged protected activity. She did not do so. As for *Connelly v. Lane Construction Corporation*, the plaintiff there plausibly alleged causation because she "made numerous complaints to the Ethics Line and to local management" throughout the five-month period before she was laid off. 809 F.3d 780, 784, 792 (3d Cir. 2016). Here, Sousa's purported protected activity occurred in October 2020,

months before Amazon denied her transfer request. *See* Sousa Br. 26–27 ("Sousa rejected Dorsey's advances less than a month before . . . November 2020."). Likewise, *Fasold v. Justice* is not helpful to Sousa because there were only three months between the protected activity and actionable adverse action in that case. *See* 409 F.3d 178, 189 (3d Cir. 2005).

The EEOC argues that the district court erred because it should have separately analyzed whether the events identified by Sousa were "materially adverse actions" instead of relying on its earlier conclusion that they were not "adverse employment actions." *See* EEOC Br. 29–32. But Sousa never preserved this argument or even cited *Burlington Northern & Santa Fe Railway Company v. White*, 548 U.S. 53 (2006), the EEOC's central authority. This argument is therefore waived. *Simko*, 992 F.3d at 205–06.[4]

Even if it were properly preserved, any distinction between a "materially adverse action" and an "adverse employment action" is purely academic on Sousa's alleged facts. The Supreme Court has emphasized that "reassignment of job duties

---

[4] In a footnote, Sousa mentions that the retaliation standard is "lower" than the discrimination standard, Sousa Br. 26 n.2, but does not explain how any such difference would matter for her allegations. *See Gladysiewski*, 282 F. App'x at 981 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

is not automatically actionable," and "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case." *Burlington N.*, 548 U.S. at 71. Sousa's "particular reassignment" was a short, temporary assignment that did not rise to the level of a "materially adverse employment action." *See Burton v. Pa. State Police*, 612 F. App'x 124, 128 (3d Cir. 2015) ("At most, the four-day assignment was a 'petty slight or minor annoyance' that does not rise to the level of a material adverse employment action." (cleaned up)).

Given the Supreme Court's instruction that this determination depends on the particular alleged circumstances, the authority cited by the EEOC is strikingly inapposite. In *Moore v. City of Philadelphia*, this Court concluded that "a lateral transfer from the district where a police officer had earned goodwill and built positive relations with the community over time" could support a retaliation claim. 461 F.3d 331, 348 (3d Cir. 2006). And in *Hampton v. Borough of Tinton Falls Police Department*, this Court concluded that a transfer that "remain[ed] in effect" for more than a year could support a retaliation claim. 98 F.3d 107, 116 (3d Cir. 1996). Sousa's allegations are a far cry from these cases.

## IV.   Sousa Failed To State A Claim For Quid Pro Quo Sexual Harassment.

Finally, the district court correctly concluded that Sousa failed to plead a claim for quid pro quo sexual harassment. To plead quid pro quo harassment, Sousa had to allege that she suffered a "tangible adverse action result[ing] from [her] refusal to

submit to a higher-up's sexual demands." *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 565 (3d Cir. 2017).

On appeal, Sousa does not offer any new arguments specific to her quid pro quo theory. Instead, she argues that "rebuffing Dorsey's advances" caused him to deny her a promotion, assign her to a new location, and subject her to additional harassment. Sousa Br. 30. But as explained in detail above, those allegations neither described any proposition or sexual demand by Dorsey, nor rose to the level of a cognizable adverse action. *See Whetstine v. Woods Servs.*, No. 21-CV-02289, 2022 WL 221526, at *1 (E.D. Pa. Jan. 24, 2022) (granting motion to dismiss on quid pro quo sexual harassment claim because "[n]one of the statements or conduct . . . alleged in the Amended Complaint are 'of a sexual nature'"). Nor did Sousa's ten-day assignment in New Jersey change the conditions of her employment, given that it was "not permanent." *Weston*, 251 F.3d at 431.

Sousa's causation arguments are likewise implausible. For example, Sousa now argues that her alleged rejection of Dorsey "resulted in him . . . subjecting her to harassment that resulted in her needing medical leave that led to lost income, a missed promotion, denial of transfer, and ultimately constructive discharge." Sousa Br. 30. That attenuated causal chain makes little sense in light of Sousa's actual allegations. Sousa's Complaint alleged that Dorsey's purported advances *were* the harassment, not that any purported rejection led to the harassment. *See, e.g.*, Appx68

¶ 7 (alleging she was subject to "constant harassment" based on Dorsey's "attempts to pressure her" into a relationship).  As for other incidents identified by Sousa, even accepting her new argument that she rejected Dorsey's alleged advances in October 2020, *see* Sousa Br. 27, Sousa still identifies no factual allegations that support an inference that this actually caused Amazon to deny her a promotion or give her a temporary assignment in New Jersey.  In fact, she alleged that she was given the New Jersey assignment along with a male employee.  Appx96 ¶ 150.  Accordingly, the district court properly dismissed the quid pro quo sexual harassment claim.

## CONCLUSION

Amazon respectfully requests that the Court affirm the district court's judgment.

April 27, 2023                                        Respectfully submitted,

                                                     */s/ Jason C. Schwartz*
Beth Moskow-Schnoll                                  Jason C. Schwartz
BALLARD SPAHR LLP                                       *Counsel of Record*
919 N. Market Street, 11th Floor                     Lucas C. Townsend
Wilmington, DE  19801                                Anna L. Casey
(302) 252-4447                                       GIBSON, DUNN & CRUTCHER LLP
                                                     1050 Connecticut Avenue, N.W.
                                                     Washington, D.C.  20036
                                                     (202) 955-8500


*Counsel for Defendants-Appellees*

## CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that at least one attorney whose name appears on this brief is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

April 27, 2023

_/s/ Jason C. Schwartz_
Jason C. Schwartz
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 10,551 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point, Times New Roman font.

3.      This brief complies with this Court's Rule 31.1(c) because the document has been scanned with version 14 of Symantec Endpoint Protection and is free of viruses, and the text of the electronic version of this document is identical to the text of the paper copies filed with the Court.


April 27, 2023                              */s/ Jason C. Schwartz*
                                           Jason C. Schwartz
                                           GIBSON, DUNN & CRUTCHER LLP
                                           1050 Connecticut Avenue, N.W.
                                           Washington, D.C.  20036
                                           (202) 955-8500

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April, 2023, I caused the foregoing brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the Court's CM/ECF system.  I further certify that service was accomplished on all parties via the Court's CM/ECF system.


April 27, 2023                          */s/ Jason C. Schwartz*
                                        Jason C. Schwartz
                                        GIBSON, DUNN & CRUTCHER LLP
                                        1050 Connecticut Avenue, N.W.
                                        Washington, D.C.  20036
                                        (202) 955-8500