# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

### Case No. 22-3043

EMILY SOUSA,

*Plaintiff-Appellant,*

v.

AMAZON.COM, INC., AMAZON.COM SERVICES LLC
AND LAWRENCE DORSEY, IN HIS INDIVIDUAL
AND PROFESSIONAL CAPACITIES,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Delaware, C.A. No.: 1:21-cv-00717 (Bibas, J.)

### PLAINTIFF-APPELLANT'S REPLY BRIEF

Michele D. Allen (DE Bar No. #4359)    Lawrence M. Pearson
Delia A. Clark (DE Bar No. #3337)    WIGDOR LAW LLP
ALLEN & ASSOCIATES LLC    85 Fifth Avenue
4250 Lancaster Pike, Suite 230    New York, NY 10003
Wilmington, DE 19805

June 1, 2023

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT ................................................................1

ARGUMENT ..............................................................................................2

I.      Appellees Continue to Call for Inferences against Appellant and Ignore the Totality of the Circumstances Suggesting Hostile Work Environment .........2

II.     Dorsey's Mistreatment of Appellant is a Prototypical Example of *Quid Pro Quo* Harassment............................................................................................7

III.    Appellant Factually Alleges Discrimination and Retaliation Claims ............9

    A.      Appellant Alleges Adverse Actions in Support of Her Discrimination and Retaliation Claims ........................................................................9

    B.      Appellant Alleges Facts Supporting an Inference of Discrimination..12

    C.      Appellant Alleges a Causal Connection Between Her Protected Activity and Appellees' Adverse Actions against Her, Establishing Retaliation .......................................................................................13

CONCLUSION ........................................................................................15

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                      <u>Page(s)</u>

<u>Betz v. Temple Health Sys.</u>,
    659 F. App'x 137 (3d Cir. 2016) ..................................................................6

<u>Brown-Baumbach v. B&B Auto., Inc.</u>,
    437 F. App'x 129 (3d Cir. 2011) ...............................................................4

<u>Burgess v. Dollar Tree Stores, Inc.</u>,
    642 F. App'x 152 (3d Cir. 2016) ...............................................................7

<u>Burlington Indus., Inc.</u>,
    524 U.S. 742 (1998) ...................................................................................10

<u>Byrd v. Elwyn</u>,
    No. Civ. 16-02275, 2016 WL 5661713 (E.D. Pa. Sept. 30, 2016) ........................13

<u>Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.</u>,
    394 F.3d 126 (3d Cir. 2004) ......................................................................6

<u>Castleberry v. STI Grp.</u>,
    863 F.3d 259 (3d Cir. 2017) ...................................................................2, 5

<u>Cross v. Donahoe</u>,
    No. 12 Civ. 2670, 2013 WL 4518049 (D.N.J. Aug. 23, 2013) ...............................6

<u>Daniels v. Sch. Dist. of Philadelphia</u>,
    982 F. Supp. 2d 462 (E.D. Pa. 2013) ......................................................12

<u>Durham Life Ins.</u>,
    166 F.3d 139 (3d Cir. 1999) .....................................................................11

<u>Farrell v. Planters Lifesavers Co.</u>,
    206 F.3d 271 (3d Cir. 2000) ..................................................................8, 13

Fleisher v. Standard Ins. Co.,
   679 F.3d 116 (3d Cir. 2012) ...................................................................2

Flora v. Cnty. of Luzerne,
   776 F.3d 169 (3d Cir. 2015) ...................................................................2

Fuentes v. Perskie,
   32 F.3d 759 (3d Cir. 1994) ...................................................................13

Garnett v. Bank of Am.,
   243 F. Supp. 3d 499 (D. Del. 2017) ......................................................10

Golod v. Bank of Am. Corp.,
   403 F. App'x 699 (3d Cir. 2010) ...........................................................10

Harrison-Harper v. Nike, Inc.,
   No. 16 Civ. 4645, 2018 WL 4614158 (E.D. Pa. Sept. 24, 2018) ...........6

Joiner v. Wal-Mart Stores, Inc.,
   114 F. Supp. 2d 400 (W.D.N.C. 2000) ...................................................6

Jones v. Sch. Dist. of Philadelphia,
   198 F.3d 403 (3d Cir. 1999) .................................................................11

Kokinchak v. U.S. Postmaster Gen.,
   677 F. App'x 764 (3d Cir. 2017) .............................................................6

Komis v. Sec'y of United States Dep't of Lab.,
   918 F.3d 289 (3d Cir. 2019) ...................................................................9

Koss v. Sullivan Cnty.,
   No. 00 Civ. 2802, 2002 WL 1628565 (S.D.N.Y. July 23, 2002) ..........12

Little v. Chambersburg Hosp.,
   No. 1:11 Civ. 1804, 2012 WL 1048820 (M.D. Pa. Mar. 28, 2012) ........6

Mariotti v. Mariotti Bldg. Prod., Inc.,
   No. 3:11 Civ. 737, 2011 WL 2670570 (M.D. Pa. July 8, 2011) .............6

Mieczkowski v. York City Sch. Dist.,
    414 F. App'x 441 (3d Cir. 2011) ............................................................11

Mondzelewski v. Pathmark Stores, Inc.,
    162 F.3d 778 (3d Cir.1998) ...................................................................10

Spence v. New Jersey,
    No. 19 Civ. 21490, 2021 WL 1345872 (D.N.J. Apr. 12, 2021) .............7

Torre v. Casio, Inc.,
    42 F.3d 825 (3d Cir. 1994) ...................................................................12

Verdu v. Trustees of Princeton Univ.,
    No. 20-1724, 2022 WL 4482457 (3d Cir. Sept. 27, 2022) ...................10

Weston v. Pennsylvania,
    251 F.3d 420 (3d Cir. 2001) ...................................................................6

Whetstine v. Woods Servs.,
    No. Civ. 21-02289, 2022 WL 221526 (E.D. Pa. Jan. 24, 2022) ............8

**PRELIMINARY STATEMENT**

Appellees demonstrate in their Opposition Brief ("Opp. Brief") that granting their Motion to Dismiss depended upon many factual inferences in their favor on key issues and allegations. Appellant's allegations detail a classic scenario of supervisor harassment and punishment and favoritism towards female subordinates based upon their rejection or submission to him. Dorsey's harassment and actions clearly targeted women and were intended to and did affect the terms and conditions and trajectory of employment for Sousa, who eventually was forced to leave Amazon. Among the many specific examples of factual inferences drawn by the District Court in favor of the Appellees is the characterization of Dorsey's phone calls to Sousa as neutral or not sufficiently severe in nature (despite a backdrop of open exploitation and harassment of female subordinates by Dorsey). Appellees' efforts to downplay Dorsey's calls by, among other things, arguing about their frequency and whether Sousa initiated any of them (in fact, at times simply because of a dropped call or Dorsey asking her to call him back—which would be revealed in discovery), are also inappropriate factual inferences.

Plaintiff/Appellant's ("Appellant") Second Amended Complaint must be taken as a whole—and analysis cannot focus only on amendments made to the complaint, as Appellees do in several places. For example, Sousa's hostile and discriminatory work environment consisted of far more than the frequent, intrusive

calls by her supervisor Lawrence Dorsey that were a transparent and sustained effort to pressure her into a personal, sexual relationship with him (as acknowledged by Judge Bibas later in the opinion/order dismissing the case).

## ARGUMENT

## I. Appellees Continue to Call for Inferences against Appellant and Ignore the Totality of the Circumstances Suggesting Hostile Work Environment

Appellees double down on seeking inferences against Appellant and ignore Appellant's allegations concerning the environment in which Dorsey's harassment occurred. The totality of the circumstances cannot be ignored and drawing inferences against a non-movant and factual findings are not permitted. See Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017); Flora v. Cnty. of Luzerne, 776 F.3d 169, 175 (3d Cir. 2015); Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012).

Appellees call for an inference against Appellant that "Dorsey's alleged statements are at most inappropriate only because they refer to personal rather than work issues." Opp. Brief p. 15. This is false and directly contradicted by allegations that Dorsey "made repeated sexual advances toward Ms. Sousa" (¶8)[1] and that "Sousa rebuffed Dorsey's advances for a couple months, including by repeatedly telling him that she has a boyfriend." ¶12. These advances occurred over "a dozen lengthy and unsolicited after-hours personal phone calls" with "five lasting over an

[1]    Hereinafter, "¶" refers to paragraphs in Sousa's Second Amended Complaint. Appx. 67-118.

2

hour." ¶8. Dorsey called Sousa an excessive number of times in a short period. ¶81 ("On September 12, 2020, Dorsey initiated a barrage of 8 lengthy telephone calls.").[2] After Appellant complained about his harassment, "she received many anonymous, harassing phone calls from an individual whose voice appeared to be that of Dorsey." ¶18. Appellees again ask for inferences against Appellant, falsely asserting that "Sousa did not allege that the caller was actually Dorsey." Opp. Brief p. 23.

Dorsey's harassing phone calls also must be considered in the context of the environment as a whole. See e.g. ¶10 ("Dorsey had a reputation for flirting with women in the workplace and had a habit of targeting women who were his subordinates."); ¶10 (Dorsey had a "habit of making things more difficult for women who did not play along with his flirtations."); ¶91 (a manager told Sousa that "Dorsey frequently made sexual advances toward the women he managed and gave out his phone number to those women."); ¶105 ("Mr. Morales-Ramirez told Ms. Sousa that Dorsey's conduct was part of a pattern in which he solicited relationships with some of the women he supervised. Mr. Morales-Ramirez also told Sousa that in or around August 2020, Dorsey had engaged in similar conduct toward Kylie

---

[2]    Appellant explicitly notes that the calls detailed in her Complaint are "only examples of the many such personal calls and in-person conversations that Dorsey roped Ms. Sousa into[.]" ¶101. Moreover, Appellant alleges that several interactions occurred in person (e.g., ¶¶95-99), in direct contradiction of Appellees' incorrect representation that, "Sousa did not allege that Dorsey ever subjected her to an unwanted or uncomfortable conversation in person." Opp. Brief p. 17.

Hagofsky, an Amazon manager-in-training"); ¶¶95-99 (Dorsey directed Sousa to discipline a female employee who rebuffed his advances and said this employee "has a fat ass"); ¶¶114-118 (Dorsey rewarded a female subordinate who he had a romantic relationship with); ¶93 ("Another employee, Jessica Cusack, described Dorsey as 'a total creep' and confirmed that he frequently acts inappropriately toward his female subordinates"); and ¶124 (a female Asian coworker of Sousa's told Sousa that "that Dorsey frequently called her and insisted on discussing her personal life despite the fact that she was married," which made this employee wonder "whether Dorsey had an 'Asian fetish.'"). Full context matters, and Appellant alleges that she was targeted by a predatory supervisor whose pattern of harassment pervaded the workplace.

The District Court erred in overlooking the totality of the circumstances.

This Court has specifically reversed orders of District Courts on this basis:

> [T]he District Court parsed out each event, explaining how and why the separate incidents did not demonstrate that a hostile work environment existed. The District Court concluded that the various incidents, viewed separately, amounted to nothing more than "mere offensive utterances" that were "sporadic" and essentially amounted to nothing more than "the ordinary tribulations of the workplace." We do not agree. The facially neutral mistreatment plus the overt sex discrimination, both sexual and non-sexual, in sum constituted the hostile work environment.

Brown-Baumbach v. B&B Auto., Inc., 437 F. App'x 129, 134 (3d Cir. 2011).

Appellees' argument and the District Court's ruling concerning Sousa's hostile work environment claims skip over Dorsey's punishment of Sousa after she

rejected his advances, looking at those hostile acts only regarding other claims. See Opp. Brief pp. 13-24; Appx. 8-11. The District Court and Appellees ignored that Dorsey promoted a less-experienced white male coworker instead of Sousa after she repeatedly rejected his advances (¶¶137-138); and that Dorsey demoted Sousa three levels and assigned her to overnight shifts doing manual work at a far-away facility, causing Sousa to miss a key evaluation period and harming her promotion prospects. ¶¶139-140, 146-149, 151-157. This targeted hostile conduct undeniably contributed to "alter[ing] the conditions of [the plaintiff's] employment and creat[ing] an abusive working environment" and must be taken into account. See Castleberry, 863 F.3d at 266 (plaintiffs "required to do menial tasks while their white colleagues (who were less experienced) were instructed to perform more complex work" as part of hostile work environment analysis). Indeed, Dorsey's conduct so severely impacted Sousa's emotional and mental health that she was forced to take leave. ¶¶177-182, 189, 212.

Many of the cases relied upon by Appellees are rulings on summary judgment motions. Appellant is not required to plead all elements of her claim and this Court has recognized the problem with relying on summary judgment rulings to decide a motion to dismiss. Castleberry, 863 F.3d at 265–66 (rejecting lower court's reliance on summary judgment rulings at motion to dismiss stage because "it may be difficult" for a plaintiff to prove discrimination "[b]efore discovery has unearthed relevant facts and evidence."). Where Appellees cite motion to dismiss rulings, the

cases are misapplied or easily distinguishable. Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir. 2001) (discounting "comments, jokes, and jibes by unspecified inmates" not directed at the plaintiff based on protected status, but nevertheless finding plaintiff alleged a hostile work environment); Kokinchak v. U.S. Postmaster Gen., 677 F. App'x 764, 767–68 (3d Cir. 2017) (plaintiff's only allegations were that a coworker who harassed her ten years prior "brushed by her" on one occasion and was in her presence on only two other occasions); Betz v. Temple Health Sys., 659 F. App'x 137, 142 (3d Cir. 2016) (plaintiff failed to allege that jokes and lewd gestures of other nurses were directed at her because of gender); Cal. Pub. Emps. Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (plaintiff pled conclusory elements of claim with no supporting fact allegations); Harrison-Harper v. Nike, Inc., No. 16 Civ. 4645, 2018 WL 4614158, at *6-7 (E.D. Pa. Sept. 24, 2018) (another female employee called plaintiff "hot" and "sexy" a "handful of times" over a "few months"); Mariotti v. Mariotti Bldg. Prod., Inc., No. 3:11 Civ. 737, 2011 WL 2670570, at *4 (M.D. Pa. July 8, 2011) (handful of teasing remarks over a ten-year period); Little v. Chambersburg Hosp., No. 1:11 Civ. 1804, 2012 WL 1048820, at *5 (M.D. Pa. Mar. 28, 2012) (four instances of non-severe conduct); Joiner v. Wal-Mart Stores, Inc., 114 F. Supp. 2d 400, 409 (W.D.N.C. 2000) (hugs and a kiss on the cheek during greetings, with plaintiff never objecting to them); Cross v. Donahoe, No. 12 Civ. 2670, 2013 WL 4518049, at *6 (D.N.J. Aug. 23, 2013) (facially neutral

changes to terms and conditions of employment with no allegations of offensive statements or propositions); <u>Burgess v. Dollar Tree Stores, Inc.</u>, 642 F. App'x 152, 155 (3d Cir. 2016) (plaintiff employed for one month with one possible advance and one comment regarding ripping cross necklace off plaintiff that was not alleged as sexual); <u>Spence v. New Jersey</u>, No. 19 Civ. 21490, 2021 WL 1345872, at *6 (D.N.J. Apr. 12, 2021) ("no attempt to describe how often any of these actions occurred, nor the exact time frame over which the harassment took place"). Appellant alleges a cognizable hostile work environment claim that should proceed to discovery.

## II.     <u>Dorsey's Mistreatment of Appellant is a Prototypical Example of *Quid Pro Quo* Harassment</u>

The District Court drew inferences against Appellant in dismissing her *quid pro quo* harassment claim. For example, the District Court inaccurately downplayed the alleged conduct as amounting to "Dorsey suggested that they hang out socially, told her that she could call him in the middle of the night, and once asked how his new haircut looked." Appx. 16. The trial court also glossed over substantive allegations concerning his sexual advances and interest in her while admitting that Dorsey's conduct "could be taken as sexual advances" that "came with hints about promotion" (also suggesting possible punishment if one does not submit, which then did occur). <u>Id.</u> Appellees also ignore key allegations in asserting that Sousa failed to allege "any proposition or sexual demand by Dorsey." Opp. Brief p. 43. Sousa's allegations directly contradict these characterizations and inferences. ¶8 ("Dorsey

7

made repeated sexual advances toward Ms. Sousa"); ¶¶75-81 (examples of Dorsey propositioning Sousa, which "caused her tremendous stress as she repeatedly rebuffed her manager's obvious sexual interest in her"); ¶¶86-87 ("Again, Dorsey was openly expressing a desire to spend time alone with Ms. Sousa"); ¶101 ("Dorsey's solicitations were obvious invitations to go on what would be considered 'dates'"); and ¶¶187-193 ("Dorsey inquired about Ms. Sousa's boyfriend at the time and asked, 'How available are you?' When Ms. Sousa asked what he meant by that, he responded, 'I don't know how serious you and your boyfriend are, I was just asking.'"). Appellant's allegations contrast sharply with cases Appellees rely upon regarding the sufficiency of Appellant's allegations of sexual advances. Whetstine v. Woods Servs., No. Civ. 21-02289, 2022 WL 221526, at *2, 7 (E.D. Pa. Jan. 24, 2022) (Plaintiff did "not contend that any of Defendant's employees made an unwelcome sexual advance towards her" at all, but that Defendants subjected her to an adverse action because they were "jealous of Plaintiff's relationship with [her supervisor].").

Sousa expressly factually alleges that her "response to [Dorsey's] unwelcome [sexual] advances was subsequently used as a basis for a decision about compensation, terms, conditions or privileges [of] employment." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281-82 (3d Cir. 2000). Rebuffing Dorsey's advances resulted in him denying her a promotion (¶¶137-138), demoting and transferring her to a new location and harming her promotional opportunities and trajectory (¶¶139-

163), and subjecting her to further harassment that caused substantial distress, leading to her constructive discharge. ¶¶177-182, 185-89, 206-230. These allegations refute any argument that Dorsey only harassed Sousa by showing sexual interest in her (Opp. Brief p. 43) and show that he also punished Sousa (and others) for rejecting his advances. Appellees also blatantly mischaracterize the allegation regarding a male employee also being transferred to New Jersey, ignoring the full allegations that a poorly performing male was also sent, whereas Sousa was sent in place of another male coworker because Dorsey admitted he "did not want to interfere with the potential promotion of that male colleague." ¶44, 146-151.

## III.    **Appellant Factually Alleges Discrimination and Retaliation Claims**

### A.    **Appellant Alleges Adverse Actions in Support of Her Discrimination and Retaliation Claims**[3]

In arguing that Appellant failed to allege adverse actions, Appellees again draw inferences against Appellant and mischaracterize her allegations.[4] Appellees

---

[3]    Appellant's allegations that amount to adverse actions in support of her discrimination claims necessarily meet the lower bar for adverse actions in connection with her retaliation claims because "the antiretaliation provision is not limited to employer action that affects the terms and conditions of a claimant's employment." Komis v. Sec'y of United States Dep't of Lab., 918 F.3d 289, 293 (3d Cir. 2019). Appellees incorrectly claim that Appellant did not previously advance this argument. See Opp. Brief p. 41; Appellant Opening Brief p. 26 n. 2 (explaining the different adverse action standard/analysis for retaliation claims).

[4]    The District Court assumed Amazon's refusal to transfer Sousa away from her harasser was an adverse action (Appx. 14), and Appellees appear to challenge that action only on the basis of inference of discrimination and retaliation. Opp. Brief pp. 25-34. That adverse action therefore is addressed below in that context.

conflate the allegations regarding Sousa's temporary demotion and Defendants' two failures to promote her by focusing on Dorsey's admitted retaliatory transfer of Sousa to New Jersey. Opp. Brief pp. 25-26. Appellees conspicuously ignore Appellant's failure to promote allegations. Sousa specifically alleges that a white male comparator at her same "level" and who started after her received a promotion from Dorsey in connection with a transfer that Sousa had been offered, but without a promotion being included (in the weeks after rebuffing Dorsey). ¶¶136-138.

Appellant's claims also are distinguishable from the cases relied upon by Appellees. Verdu v. Trustees of Princeton Univ., No. 20-1724, 2022 WL 4482457, at *5 (3d Cir. Sept. 27, 2022) (plaintiff, a professor, identified no employee comparator at all and instead alleged a graduate student as a comparator); Golod v. Bank of Am. Corp., 403 F. App'x 699, 702 (3d Cir. 2010) (plaintiff "offered no factual allegations" and only "conclusorily asserted that she was denied promotions"); Garnett v. Bank of Am., 243 F. Supp. 3d 499, 510 (D. Del. 2017) (summary judgment ruling).

Dorsey's demotion of Sousa was an adverse action because it did come with "a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities"—she went down three levels and missed a key managerial evaluation period. Burlington Indus., Inc., 524 U.S. 742, 761 (1998) (internal quotation marks omitted); Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 787–88 (3d Cir.1998) ("Assigning an employee to an undesirable schedule can be

more than a 'trivial' or minor change in the employee's working conditions," and where Pathmark reassigned plaintiff to a shift he and coworkers considered the "punishment shift," it was an adverse action). The demotion caused "decreased … earning potential" and "substantial disruption in [Sousa's] working conditions," including in leading to Sousa needing to take leave. Durham Life Ins., 166 F.3d 139, 153 (3d Cir. 1999). Appellees openly request an inference in their favor by calling for a premature, disputed finding that the demotion was "temporary with no consequences," despite specific allegations that it had a clear, intended effect on Sousa's trajectory and compensation. Opp. Brief p. 28; ¶¶ 146-149, 154-155, 158, 174-176.[5] Appellees' reliance on Mieczkowski v. York City Sch. Dist., 414 F. App'x 441, 447 (3d Cir. 2011) is misplaced, because the negative performance review in that case is not comparable to a transfer/demotion resulting in the type of detailed career harms Sousa alleges. See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 411-12 (3d Cir. 1999); Torre v. Casio, Inc., 42 F.3d 825, 831 n.7 (3d Cir. 1994); Daniels v. Sch. Dist. of Philadelphia, 982 F. Supp. 2d 462, 479 (E.D. Pa. 2013).

---

[5]    The District Court and Appellees relied on the argument that a plaintiff's failure to allege a hostile work environment necessarily means that the plaintiff also fails to state a claim for constructive discharge. This is untrue, since other conditions, such as a substantial discriminatory change in job terms and conditions, obviously could cause and support constructive discharge as well. Appellant also refers the Court to her hostile work environment arguments, which detail conditions (including frightening anonymous calls by her harasser and refusal to transfer her away from him) that so intolerable enough a reasonable person would feel forced to resign.

### B.     Appellant Alleges Facts Supporting an Inference of Discrimination

Appellees largely confine their discussion of an inference of discrimination to Amazon's refusal to transfer Sousa to a new location where her harasser was not present (an allegation the District Court assumed could be an adverse action). Opp. Brief p. 34-37. Again, Appellees ignore the other adverse actions as well as the arguments in Appellant's Opening Brief concerning the detailed allegations that support an inference of discrimination. Opening Brief pp. 23-25. Sousa's claims are distinguishable from the case that Appellees rely on, which is a summary judgment ruling concerning a <u>refusal to consider a promotion request</u> until the employee returned from leave. <u>Koss v. Sullivan Cnty.</u>, No. 00 Civ. 2802, 2002 WL 1628565 (S.D.N.Y. July 23, 2002).[6] That Amazon allowed Sousa to transfer before she returned to work in 2020 (also to escape harassment) also supports an inference that her harasser-supervisor and discriminatory/retaliatory intent played a role in a

---

[6]     Although Appellees heedlessly attached various phone records to their appeal brief without regard to the District Court's findings or the 12(b)(6) standards, they conspicuously do not attach or claim that there is in fact any ironclad Amazon policy, written or otherwise, that would have barred Sousa's transfer while on leave under any circumstances. Indeed, such an inflexible policy would not make any sense and is not plausible, which further bolsters Sousa's claim that Appellees' refusal to allow her to return to work away from her harasser was obvious retaliation for her complaint and an ultimately successful attempt to force her out. Amazon, one of the biggest employers in the world, cannot plausibly claim it has an absolute policy against transferring any employee currently on leave, even to facilitate a return to work and at an employee's request or due to harassment/conflict. Appellees' requested inferences on this point again illustrate why discovery, and a trial, will be necessary to resolve the fact-intensive issues in this case.

rejection of such an approach for Sousa to avoid her constructive discharge. <u>Fuentes</u> <u>v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994) ("inconsistencies and implausibilities in the employer's proffered reasons for [the adverse action] could support an inference that the employer did not act for non-discriminatory reason"). Appellees' argument that Sousa's 2020 and 2021 transfer requests were "materially different" is based on an express call for an improper inference (and Amazon never suggested or claimed to suggest Sousa could have quit again and gotten her requested transfer). The demotion, failures to promote, and constructive discharge of Sousa were all adverse actions and are supported by fact allegations raising an inference of discrimination.

### C.   Appellant Alleges a Causal Connection Between Her Protected Activity and Appellees' Adverse Actions against Her, Establishing Retaliation

Appellees' misapplication of cases from the Fifth Circuit and Northern District of California (Opp. Brief p. 37) does not overcome the caselaw of the Third Circuit, which holds that rebuffing a supervisor's advances, as Sousa did with Dorsey, is legally protected activity. <u>Farrell</u>, 206 F.3d at 279; <u>Byrd v. Elwyn</u>, No. Civ. 16-02275, 2016 WL 5661713, at *5 (E.D. Pa. Sept. 30, 2016) (collecting cases). Sousa engaged in further protected activity with her formal complaint to Human Resources ("HR") in January 2021, which was soon followed by retaliation at the first opportunity in the form of Dorsey's threatening anonymous calls, failure to promote Sousa on an individual basis in March-May 2021, and Appellees' refusal to

transfer her away from Dorsey. ¶¶143-144, 194-232.

On Sousa's HR complaint, Appellees limit their argument to their refusal to transfer Sousa away from Dorsey, and claim Appellant did not allege decisionmakers were aware of her complaint. Opp. Brief p. 39. Appellant specifically alleges Dorsey was aware of it. ¶196 (he commented to a male coworker, "Emily reported me. I had to give HR my phone and text records. It's embarrassing… That girl at DPH2 [King of Prussia] reported me and now Emily is, too. I'm going to be fired."). Dorsey or Amazon's HR representative are the only reasonable decisionmakers on Sousa's request for a transfer.[7] Any other finding would be an inference against Appellant.

Sousa's Complaint contains detailed allegations supporting causation between her rejection of Dorsey's advances and adverse actions that quickly followed. Appellees mischaracterize Sousa's arguments concerning Dorsey's assigning Sousa to a highly undesirable role by asserting that it could not be retaliatory because a coworker also was transferred. Opp. Brief p. 38. This ignores the fact that the other transferred employee was a poor performer (¶150), Dorsey's pattern of animus after Sousa rejected him (¶¶103-104), his admission that the transfer was "humiliating" and should "humble" her (¶¶12, 161), and his *modus operandi* of disciplining female

---

[7]     Even if a different unknown (and unlikely) party was responsible for denying Sousa's transfer, it should be inferred that they were aware of her complaint of harassment, as she requested the transfer based on what her complaint alleged, and she was on medical leave due to the resulting distress.

14

employees who rejected him. ¶¶95-99. Appellees call for another improper inference by couching Dorsey's behavior as just a "tense relationship" with Sousa (Opp. Brief p. 40), despite allegations Dorsey punished her and other women who rebuffed him while rewarding a female employee who did date him.

Appellant states many allegations demonstrating a causal connection and temporal proximity for retaliation purposes (¶¶109-121, 136-38 (Sousa rejected advances by Dorsey less than a month before November 2020 denial of promotion opportunity and her temporary demotion)), as well as observations by Sousa and others of Dorsey's pretexts for retaliatory actions. ¶¶153, 166-167, 172, 176.

## <u>CONCLUSION</u>

For the above stated reasons, Plaintiff/Appellant requests that the Court of Appeals reverse the District Court's dismissal of her claims.

*{Signature Line on Following Page}*

**ALLEN & ASSOCIATES**
/s/ *Michele D. Allen*
Michele D. Allen (#4359)
Delia A. Clark (#3337)
4250 Lancaster Pike Suite 230
Wilmington, DE 19805
(302) 234-8600
(302) 397-3930 (fax)
michele@allenlaborlaw.com
delia@allenlaborlaw.com

and

Lawrence M. Pearson, Esq.
WIGDOR LAW LLP
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845
lpearson@wigdorlaw.com
*Attorneys for Plaintiff-Appellant*

Dated: June 1, 2023

## CERTIFICATE OF BAR MEMBERSHIP, ELECTRONIC FILING AND WORD COUNT

I hereby certify that I am a member of good standing of the Bar of the United States Court of Appeals for the Third Circuit.

I further certify that the text of the electronic Brief filed by ECF and the text of the hard copies filed or to be filed with the Court are identical. The electronic copy of the Brief has been scanned for viruses using ESET Endpoint Antivirus.

I further certify that this Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 3799 words as calculated by the word processing program used in the preparation of this brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. (32)(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft 365 in 14-point Times New Roman font.

**ALLEN & ASSOCIATES**
/s/ *Michele D. Allen*
Michele D. Allen (#4359)
Delia A. Clark (#3337)
4250 Lancaster Pike Suite 230
Wilmington, DE 19805
(302) 234-8600
(302) 397-3930 (fax)
michele@allenlaborlaw.com
delia@allenlaborlaw.com

Dated: June 1, 2023          *Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d), the undersigned hereby certifies that on June 1, 2023, a true and correct copy of Plaintiff-Appellant's Reply Brief was filed electronically and served upon all other parties *via* the court's ECF system. The undersigned hereby certifies that counsel for Plaintiff-Appellant has also delivered an electronic copy of the foregoing for Defendants-Appellees and is sending the same by regular mail to:

Beth Moskow-Schnoll, Esq.
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
moskowb@ballardspahr.com

Jason C. Schwartz, Esq.
Lucas C. Townsend, Esq.
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
jschwartz@gibsondunn.com
ltownsend@gibsondunn.com

**ALLEN & ASSOCIATES**
/s/ *Michele D. Allen*
Michele D. Allen (#4359)
Delia A. Clark (#3337)
4250 Lancaster Pike Suite 230
Wilmington, DE 19805
(302) 234-8600
(302) 397-3930 (fax)
michele@allenlaborlaw.com
delia@allenlaborlaw.com
*Attorneys for Plaintiff-Appellant*

Dated: June 1, 2023